Julie C. Erickson, State Bar No. 293111 (julie@eko.law)
Elizabeth A. Kramer, State Bar No. 293129 (elizabeth@eko.law)
Kevin M. Osborne, State Bar No. 261367 (kevin@eko.law)
**Erickson Kramer Osborne LLP**
44 Tehama Street
San Francisco, CA 94105
Phone: 415-635-0631
Fax: 415-599-8088

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| MICHAEL NGUYEN and NADER GEORGE, individually and on behalf of others similarly situated, <br><br>     Plaintiffs, <br><br>   v. <br><br> OKCOIN USA INC., and DOES 1-10, <br><br>     Defendants. | Case No.: 4:22-cv-06022-KAW <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANT OKCOIN USA INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS <br><br><br> Date:    February 2, 2023 <br> Time:    1:30 p.m. <br> Judge:    Hon. Kandace A. Westmore |

## **TABLE OF CONTENTS**

I.   Introduction ....................................................................................................... 1

II.  Factual and Procedural Background ................................................................... 1

III. Legal Standards ................................................................................................. 2

IV.  Argument ........................................................................................................... 3

   A.  OKCoin Seeks to Enforce an Agreement It Replaced and Nullified ................... 3

   B.  The 2022 Arbitration Agreement Is Unconscionable ........................................ 4

      1.  Procedural Unconscionability .................................................................. 4

      2.  Substantive Unconscionability ............................................................... 10

         a)  Lack of Mutuality ............................................................................ 10

         b)  30-Day Notice Requirement Impermissibly Limits Statute of Limitations .............. 13

         c)  One-sided Informal Resolution Requirement ............................................ 15

         d)  OKCoin's Unilateral, Discretionary Right to Consolidate Arbitration Demands ..... 16

         e)  Unilateral Modification Clause ........................................................... 19

      3.  Severance Is Inappropriate ..................................................................... 20

   C.  2021 Version Is Unconscionable ................................................................... 23

V.   Conclusion ........................................................................................................ 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Ali v. Daylight Transp., LLC,*
    59 Cal. App. 5th 462 (2020) ..................................................................................14

4

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
    24 Cal. 4th 83 (2000) ..................................................................................passim

5

6

*Ashbey v. Archstone Prop. Mgmt., Inc.,*
    785 F.3d 1320 (9th Cir. 2015) ....................................................................................2

7

*Baxter v. Genworth N. Am. Corp.,*
    16 Cal. App. 5th 713 (2017) ...................................................................................14

8

9

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.,*
    622 F.3d 996 (9th Cir. 2010) ..................................................................................21

10

*Brown v. Dow Chem. Co.,*
    2019 WL 484211 (N.D. Cal. Feb. 7, 2019) ...........................................................21

11

12

*Cabatit v. Sunnova Energy Corp.,*
    60 Cal. App. 5th 317 (2020) .............................................................................10, 11

13

*Campos v. JPMorgan Chase Bank, NA,*
    2019 WL 827634 (N.D. Cal. Feb. 21, 2019) ..........................................................20

14

*Capili v. Finish Line, Inc.,*
    116 F. Supp. 3d 1000 (N.D. Cal. 2015) ..................................................................21

15

16

*Carlson v. Home Team Pest Def., Inc.,*
    239 Cal. App. 4th 619 (2015) ...............................................................................9, 16

17

*CarMax Auto Superstores California LLC v. Hernandez,*
    94 F. Supp. 3d 1078 (C.D. Cal. 2015) ......................................................................3

18

19

*Carmona v. Lincoln Millenium Car Wash, Inc.,*
    226 Cal. App. 4th 74 (2014) ..............................................................................16, 21

20

*Carver v. JFK Mem'l Hosp., Inc.,*
    2020 WL 6269268 (Cal. Ct. App. Oct. 26, 2020) ..................................................16

21

22

*Davis v. Kozak,*
    53 Cal. App. 5th 897 (2020) ...................................................................................21

23

*Davis v. Nordstrom, Inc.,*
    755 F.3d 1089 (9th Cir. 2014) ....................................................................................3

24

25

*Dunham v. Env't Chemmical Corp.,*
    2006 WL 2374703 (N.D. Cal. Aug. 16, 2006) .......................................................16

26

*Esquer v. Educ. Mgmt. Corp.,*
    292 F. Supp. 3d 1005 (S.D. Cal. 2017) .....................................................................6

27

28

*Ferguson v. Countrywide Credit Indust., Inc.,*
    298 F.3d 778 (9th Cir. 2002) ..................................................................................13

- ii -

*Fisher v. MoneyGram Int'l, Inc.,*
   66 Cal. App. 5th 1084 (2021) ................................................................................14

*Fitz v. NCR Corp.,*
   118 Cal. App. 4th 702 (2004) ..........................................................................11, 13

*Flores v. Transamerica HomeFirst, Inc.,*
   93 Cal. App. 4th 846 (2001) ................................................................................23

*Gatton v. T–Mobile USA, Inc.,*
   152 Cal. App. 4th 571 (2007) ................................................................................4

*Gonzalez v. Interstate Cleaning Corp.,*
   2020 WL 1891789 (N.D. Cal. Apr. 16, 2020) ...............................................19, 20

*Harper v. Ultimo,*
   113 Cal. App. 4th 1402 (2003) .....................................................................7, 9, 22

*Ingalls v. Spotify USA, Inc.,*
   2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ...............................................19, 20

*Ingle v. Cir. City Stores, Inc.,*
   328 F.3d 1165 (9th Cir. 2003) ..............................................................................19

*Knutson v. Sirius XM Radio Inc.,*
   771 F.3d 559 (9th Cir. 2014) ..................................................................................4

*LaChapelle v. Omni Hotels Mgmt. Corp.,*
   2021 WL 3373337 (N.D. Cal. Aug. 3, 2021) ........................................................21

*Lang v. Skytap, Inc.,*
   347 F. Supp. 3d 420 (N.D. Cal. 2018) ..................................................................21

*Magno v. The Coll. Network, Inc.,*
   1 Cal. App. 5th 277 (2016) ...................................................................................14

*Marron v. HealthSource Glob. Staffing, Inc.,*
   2019 WL 4384287 (N.D. Cal. Sept. 13, 2019) ................................................14, 15

*Merkin v. Vonage Am., Inc.,*
   639 F. App'x 481 (9th Cir. 2016) ............................................................................5

*Nagrampa v. MailCoups, Inc.,*
   469 F.3d 1257 (9th Cir. 2006) ..............................................................................10

*Newton v. Am. Debt Servs.,*
   549 Fed. Appx. 692 (9th Cir. 2013) ........................................................................5

*Nyulassy v. Lockheed Martin Corp.,*
   120 Cal. App. 4th 1267 (2004) ........................................................................10, 15

*Parada v. Superior Court,*
   176 Cal. App. 4th 1554 (2009) ..............................................................................22

*Perez v. Roto Rooter Services, Co.,*
   2022 WL 17420034 (C.D. Cal. Nov. 15, 2022) ......................................................8

- iii -

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ................................................................ 10, 14, 16

*Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*,
    2018 WL 4599645 (N.D. Cal. Sept. 25, 2018) ............................................. 19

*Rent-A-Center, W., Inc v. Jackson*,
    561 U.S. 63 (2010) ............................................................................... 12

*Reyes v. United Healthcare Servs., Inc.*,
    2014 WL 3926813 (C.D. Cal. Aug. 11, 2014) ............................................. 21

*Rosenthal v. Great W. Fin. Sec. Corp.*,
    14 Cal. 4th 394 (1996) ............................................................................. 4

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) ......................................................................... 5, 17

*Saperstein v. Thomas P. Gohagan & Co.*,
    476 F. Supp. 3d 965 (N.D. Cal. 2020) ........................................................ 4

*Stanfield v. Tawkify, Inc.*,
    517 F. Supp. 3d 1002 (N.D. Cal. 2021) ............................................... passim

*Stirlen v. Supercuts, Inc.*,
    51 Cal. App. 4th 1519 (1997) ......................................... 10, 12, 13, 14

*Storms v. Paychex, Inc*,
    2022 WL 2160414 (C.D. Cal. Jan. 14, 2022) ...................................... 11, 12

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ............................................................ 5, 11

*Tompkins v. 23andMe, Inc.*,
    2014 WL 2903752 (N.D. Cal. June 25, 2014) ......................................... 8, 9

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) .................................................. 11, 12, 20

*Zullo v. Sup. Ct.*,
    197 Cal. App. 4th 477 (2011) ................................................................. 16

**Statutes**

28 U.S.C. § 1407 ........................................................................................ 17

9 U.S.C. § 2 ................................................................................................. 3

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ...................................................... 2

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ...................................................... 2

Cal. Civ. Code §§ 1750, *et seq.* ................................................................... 2

Cal. Gov't Code § 12965 ............................................................................. 16

Fed. R. Civ. P. 42 ....................................................................................... 17

OPPOSITION TO DEFENDANT OKCOIN USA INC.'S          Case No: 4:22-cv-06022-KAW
MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS

**Rules**

N.D. Cal. Civ. LR 3-12 ................................................................................................................ 17

## **Statement of Issues to Be Decided**

Pursuant to the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs respectfully ask the Court to rule on the following issue:

1.      Whether the arbitration provision in OKCoin's Terms of Service is unconscionable and therefore should not be enforced in its entirety.

OPPOSITION TO DEFENDANT OKCOIN USA INC.'S          Case No: 4:22-cv-06022-KAW
MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS

## I.  <u>INTRODUCTION</u>

Plaintiffs are investors in digital assets who relied on Defendant OKCoin's representations about the nature and risk of a purported "stablecoin" called TerraUSD. OKCoin marketed TerraUSD as backed by government-issued currency and tied one-to-one in value to the U.S. dollar. In reality, only an unproven algorithm controlled the value of TerraUSD, and when it failed, Plaintiffs lost over 90% of their investment.

OKCoin now seeks to enforce the arbitration agreement in its September 2021 Terms of Service ("2021 TOS"). The 2021 TOS, however, was superseded by an updated Terms of Service in July 2022 ("2022 TOS"). The 2022 TOS is the only operative agreement between the parties.

The arbitration agreement is rife with procedural and substantive unconscionability. With no fewer than six and as many as twelve unenforceable terms in the indisputably adhesive contract, unconscionability permeates the agreement and renders severance impossible. The Court should deem it wholly unenforceable.

## II.  <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

This case arises from false claims and illegal conduct in the marketing and sale of an unregistered digital security called TerraUSD ("UST"). Plaintiffs Michael Nguyen and Nader George (collectively, "Plaintiffs") filed this action on September 9, 2022 in the Superior Court of California for the County of San Francisco. Dkt. No. 1-1 at p. 3. Plaintiffs allege Defendant OKCoin USA Inc. ("OKCoin" or "Defendant") misled consumers about UST's qualities, characteristics, and volatility by improperly categorizing and selling UST as a "stablecoin," pegged one-to-one with the U.S. dollar. *Id.*, at ¶¶ 4-9, 32-41. Plaintiffs and Class Members reasonably believed that UST was properly categorized as a stablecoin and posed less risk as compared to alternative digital assets available to them. *Id.*, at ¶¶ 45-50. OKCoin omitted material facts about UST and its creator, TerraForm Labs, including that the digital currency was never truly pegged to the U.S. dollar, TerraForm did not hold tangible assets in reserve, and the protocol UST relied on for maintaining stability was merely an untested algorithm. *Id.*, at ¶¶ 42-44. OKCoin knew that UST was likely, if not certain, to break from its peg, but withheld this information. *Id.*, at ¶ 42. Plaintiffs and Class Members lost millions of dollars in a matter of hours when UST

collapsed on May 8, 2022. *Id.*, at ¶¶ 53-56, 66-67. Compounding the harm, users of OKCoin's popular "Earn" finance program found the system prevented them from selling off their UST holdings as the asset was in freefall, despite promises they could sell "anytime." *Id.*, at ¶¶ 60-64.

Plaintiffs assert five causes of action: (1) Negligence; (2) Negligent Misrepresentation; (3) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (4) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (5) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* Dkt. No. 1-1 at ¶¶ 91-165. Plaintiffs pursue their claims on behalf of themselves as well as a nationwide class of OKCoin customers and an Earn user subclass. *Id.*, at ¶ 81-82.

Plaintiffs Nguyen and George opened their OKCoin accounts at a time when users were subject to the September 2021 OKCoin Terms of Service. That version, which OKCoin seeks to enforce here, provided that OKCoin could change the agreement at any time and that, by continuing to use the OKCoin website, users agreed to the updated terms, which would be deemed effective as of the date they are posted to the website. Dkt. No. 11-1, Ex. A at p. 6, Sept. 2021 Terms of Service ("2021 TOS").[1] OKCoin posted updated versions in July 2022 and again in October 2022. Declaration of Julie C. Erickson ("Erickson Decl.") at ¶¶ 2-4. Plaintiffs continued to use their OKCoin accounts throughout this period. Declaration of Michael Nguyen ("Nguyen Decl.") at ¶ 7; Declaration of Nader George ("George Decl.") at ¶ 7. Thus, by OKCoin's own terms, the subsequent agreements superseded the 2021 version. *See* Ex. 1 to Erickson Decl., July 2022 Terms of Service ("2022 TOS") at ¶ 18.8 ("[t]hese Terms set forth the complete terms and conditions with respect to the subject matter hereof and supersedes [sic.] all prior understandings and communications relating thereto.")

### III.   LEGAL STANDARDS

In deciding whether to compel arbitration, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

---

[1] Citations to page numbers of the 2021 TOS (Dkt. No. 11-1, Ex. A) refer to the blue ECF page numbers at the top of the page.

The moving party bears the burden of demonstrating that these two elements are satisfied. *Id*. When determining whether a valid contract to arbitrate exists, courts apply ordinary state law principles that govern contract formation. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). Agreements to arbitrate may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *See* 9 U.S.C. § 2. There is no dispute that California law applies to the interpretation and validity of the arbitration agreement at issue here.

## IV.   <u>ARGUMENT</u>

### A.  OKCoin Seeks to Enforce an Agreement It Replaced and Nullified

"In California, a subsequent written contract alters the terms of a previous contract." *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1060, 1064 (S.D. Cal. 1999). Courts analyzing the terms of an arbitration agreement modified by a subsequent agreement look to the modified terms rather than the original, superseded terms. *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1105 (C.D. Cal. 2015).

OKCoin bombards its users with version after version of its terms of service. Since 2021, it has replaced its terms of service four times. Erickson Decl., at ¶ 2. It now seeks to enforce the version it sees as most likely to evade judicial scrutiny. But that version, from September 2021, was superseded by a July 2022 update, which remained in effect in September 2022, when this action was filed. *Id.*[2] Notably, the terms relating to arbitration changed significantly. For example, the July 2022 update granted OKCoin the unilateral power to consolidate individual arbitration claims into a single arbitration—diverging from the September 2021 version, which prohibited claims from proceeding as anything other than individual arbitrations. 2022 TOS at ¶ 17.1; 2021 TOS at ¶ 17.1. The July 2022 update also expanded OKCoin's already broad authority to unilaterally modify the arbitration agreement by providing that modifications could now be made

---

[2] Pursuant to the 2021 TOS, Plaintiffs "accepted" the July 2022 version by accessing their OKCoin accounts and using the OKCoin website after it was implemented. *See* 2021 TOS at p. 6 (accessing or using OKCoin website after effective date of modifications constitutes acceptance of such modifications); Nguyen Decl., at ¶ 7 (has accessed OKCoin account many times, most recently in December 2022); George Decl., at ¶ 7 (same).

1    *without* notice. 2022 TOS at p. 2. The July 2022 agreement explicitly superseded and replaced the

2    September 2021 agreement. 2022 TOS at ¶ 18.8.[3]

3        While the July 2022 agreement is the only agreement relevant in this motion, OKCoin does

4    not include it, cite to it, or offer any explanation why the September 2021 agreement should be

5    enforced in its place. By only attaching and citing to obsolete terms of service, OKCoin fails to

6    show "prima facie evidence of a written agreement to arbitrate." *Saperstein v. Thomas P. Gohagan*

7    *& Co.*, 476 F. Supp. 3d 965, 973 (N.D. Cal. 2020). It does not, therefore, meet its burden of

8    establishing the existence of an agreement to arbitrate. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d

9    559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996)).

10   This fact alone is sufficient to deny OKCoin's motion.

11   **B. The 2022 Arbitration Agreement Is Unconscionable**

12       Should the Court look beyond OKCoin's failure to meet its burden, it should nonetheless

13   deny the motion because the arbitration agreement is unconscionable. An arbitration agreement is

14   unenforceable if it is procedurally and substantively unconscionable. *Armendariz v. Found. Health*

15   *Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000). "[T]he more substantively oppressive the

16   contract term, the less evidence of procedural unconscionability is required to come to the

17   conclusion that the term is unenforceable, and vice versa." *Id.* at 114. The 2022 arbitration

18   agreement contains a high degree of both procedural and substantive unconscionability.

19       1. *Procedural Unconscionability*

20       Procedural unconscionability concerns "the manner in which the contract was negotiated

21   and the circumstances of the parties at that time" and can arise from either oppression or surprise.

22   *Gatton v. T–Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007). "Oppression arises from an

23   inequality of bargaining power that results in no real negotiation and an absence of meaningful

24   choice. Surprise is defined as the extent to which the supposedly agreed-upon terms of the bargain

25

26   ───────────────

     [3] Yet another update was posted in October 2022, after Plaintiffs filed this action. Erickson

27   Decl., at ¶ 2. But amendments to an agreement made after the commencement of a lawsuit

     cannot be applied retroactively. *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966-67

28   (2015).

OPPOSITION TO DEFENDANT OKCOIN USA INC.'S          Case No: 4:22-cv-06022-KAW
MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS

are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id*. Although a showing of either is sufficient, both are present here.

**Oppression**: The 2022 TOS arbitration agreement is a standardized contract of adhesion, drafted by the party of superior bargaining strength, and offered on a take-it-or-leave-it basis with no ability to negotiate or opt out. Nguyen Decl., at ¶ 4; George Decl., at ¶ 4. While not sufficient on its own to render the provision unenforceable, it is evidence of oppression. *Ting v. AT&T*, 319 F.3d 1126, 1148-49 (9th Cir. 2003); *Newton v. Am. Debt Servs.*, 549 Fed. Appx. 692, 694 (9th Cir. 2013); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015). Additionally, OKCoin can unilaterally modify the arbitration agreement without notice. 2022 TOS at p. 2. This increases the degree of procedural unconscionability. *See Merkin v. Vonage Am., Inc.*, 639 F. App'x 481, 482 (9th Cir. 2016) (unpublished) (finding arbitration agreement procedurally unconscionable due to adhesive nature and ability to be unilaterally modified). Moreover, the only way a user could reject these changes was to stop using OKCoin and close their account. 2022 TOS at p. 2; 2021 TOS at p. 6. Plaintiffs reasonably believed that if they rejected the terms, they would be locked out of their accounts and unable to buy or trade digital assets. Nguyen Decl., at ¶ 8; George Decl., at ¶ 8. In the world of crypto trading, being denied access to an account, even for a short period of time, can cause major losses. Plaintiffs had no meaningful choice but to agree. *Id*. This demonstrates substantial oppression.

**Surprise**: Significant surprise is also present. First, nothing in the account sign-up process indicated to users that they were agreeing to waive their constitutional right to a jury. While the TOS was hyperlinked on the sign-up page, nothing drew users' attention to OKCoin's arbitration requirement before (or after) they signed up for the service. *See* Dkt. No. 11-1, Chan Decl., at ¶¶ 7-8. And users were in no way alerted to the fact that a new version had been implemented in July 2022 or that the new version made a material change to the arbitration provision by authorizing OKCoin to unilaterally consolidate numerous arbitrations into one. *See* 2022 TOS at ¶ 17.1.

*Arbitration Agreement Was Not Provided or Accessible*: Additionally, a copy of the TOS (or link thereto) was never provided to users. Nguyen Decl., at ¶ 5 George Decl., at ¶ 5. If a user wished to review the TOS, they had to dig for it on OKCoin's website or app. Far from being

"readily accessible," Dkt. No. 11-1, Chan Decl., at ¶ 9, it was a needle in a haystack. On the website, for example, users would need to scroll through the equivalent of seven pages of OKCoin marketing to reach the bottom of the page where over twenty links to various pages appear in small font. Erickson Decl., at ¶ 5, Ex. 3. The user would then need to find and click on the "Legal and privacy" link, which takes the user to another page titled "Legal." *Id*., at ¶ 6, Ex. 4. On that page, there are links to six different sets of terms and another link to "See all 8 articles." *Id*. Following that link takes the user to the "Service Terms" page, where the user finds eight different sets of terms, including the Terms of Service where the arbitration clause is found. *Id*., at ¶ 7, Ex. 5.  An average consumer would be hard pressed to know which set governs (if not more than one). For example, at least four sets appear potentially applicable based on their titles: "Terms of Service," "OTC Terms of Service," "Okcoin Earn Service Terms,"[4] and "Okcoin Promotion Terms and Conditions." *Id*.

   *Arbitration Agreement Is Buried in TOS*: If users ever found the correct TOS, they would have to do more digging to find the arbitration provision. Nothing at the beginning of the TOS alerted users as to the arbitration requirement contained therein.[5] The arbitration agreement itself is inconspicuous, appearing in the same size and type font as all surrounding provisions, without any bolding or call to attention. The section title makes no reference to arbitration and is buried at the end of 27 information-overloaded pages. 2022 TOS at p. 23. The foregoing circumstances demonstrate procedural unconscionability. *See Stanfield v. Tawkify, Inc.*, 517 F. Supp. 3d 1002, 1006 (N.D. Cal. 2021) (finding arbitration provision "highly procedurally unconscionable" under nearly identical circumstances); *Esquer v. Educ. Mgmt. Corp.*, 292 F. Supp. 3d 1005, 1015 (S.D. Cal. 2017) (even though some parts of arbitration agreement were in all capital letters, court found

---

[4] Plaintiff Nguyen utilized the OKCoin Earn program, which is governed by a supplementary set of terms and conditions that contains a different arbitration provision. Dkt. No. 1-1, Complaint, at ¶ 61; Erickson Decl., Ex. 6 (Okcoin Earn Service Terms). It would require extensive time and legal training to determine which version would apply to Plaintiff Nguyen's present claims.

[5] The October 2022 TOS was modified to include a bolded disclaimer at the top alerting users that "SECTION 17 OF THIS DOCUMENT REQUIRES ARBITRATION ON AN INDIVIDUAL BASIS." Erickson Decl., Ex. 2 at p. 1. The September 2021 TOS and the July 2022 TOS do not contain any type of disclaimer or alert. *Cf.* Erickson Decl., Ex. 2 at p. 1 *with* 2001 TOS at p. 6 *and* 2022 TOS at p. 1.

OPPOSITION TO DEFENDANT OKCOIN USA INC.'S          Case No: 4:22-cv-06022-KAW
MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS

it procedurally unconscionable, recognizing that an individual was unlikely to notice it where it was otherwise undifferentiated from surrounding provisions); *Dougherty v. Roseville Heritage Partners,* 47 Cal. App. 5th 93, 103-04 (2020) (finding a high degree of procedural unconscionability even though agreement was optional where, *inter alia*, arbitration provision was buried in lengthy packet).

Making matters worse, the scope and meaning of the arbitration agreement is informed by provisions located elsewhere in the 27-page TOS. *See* 2022 TOS at ¶ 17.1 (citing Section 4.8); *id.* at ¶¶ 1.7, 3.2, 4.5-4.6, 4.8, 8, 9.4-9.5 (granting OKCoin various non-arbitration rights and remedies that effectively strip arbitration agreement of mutuality).[6] "To have any hope of discovering [the arbitration agreement's unconscionable lack of mutuality], users would have to piece together" the arbitration agreement with numerous provisions found elsewhere in the TOS, which increases the degree of oppression and surprise. *Stanfield*, *supra*, 517 F. Supp. 3d at 1008.

*No Informed Consent as to Arbitral Forum and Applicable Rules*: The arbitration agreement is also highly opaque and deceptive as to the arbitral forum and arbitral rules, rendering it nearly impossible for a user to comprehend the full import of what they are about to sign. The agreement states that arbitration will be conducted by JAMS according to the JAMS Streamlined Arbitration Rules & Procedures, except as modified by the TOS. 2022 TOS at ¶ 17.1. Several problems arise here. First, the agreement is silent on nearly all of the details of how an arbitration will proceed. *See generally* 2022 TOS at ¶¶ 17-17.1 (no terms regarding, *inter alia*, how arbitrator is selected, discovery, responsibility for payment of fees, timing or format of demand). It is, therefore, especially important for the user to be able to locate and review the designated arbitral rules in order to understand what she is agreeing to. Yet, the agreement fails to attach or provide a link to the designated JAMS rules, forcing the user to seek them out from another source. While, by itself, this is not typically enough to render an agreement procedurally unconscionable, numerous courts have held that the failure to provide a copy of the arbitration rules to which the weaker party would be bound, supported a finding of procedural unconscionability, and the same is true here. *See, e.g., Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003) (oppressive for

---

[6] Each of these provisions is discussed in the substantive unconscionability analysis below.

arbitration agreement to reference, but not attach, the Better Business Bureau arbitration rules); *Perez v. Roto Rooter Services, Co.*, 2022 WL 17420034, at *3 (C.D. Cal. Nov. 15, 2022) (failure to provide a copy of AAA rules contributed to procedural unconscionability); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *14 (N.D. Cal. June 25, 2014) (same).

Second, and more significantly, the arbitration agreement's designation of JAMS (and its rules) is illusory because the arbitration agreement does not comply with the JAMS Consumer Arbitration Minimum Standards of Procedural Fairness. According to JAMS policy, "JAMS will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers only if the contract arbitration clause and specified applicable rules comply with" its "minimum standards of fairness."[7] The 2022 TOS violates those standards in three ways. First, it does not allow users to seek remedies in small claims court, violating Minimum Standard of Fairness Number 1(b) ("no party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction"). Second, as explained below, the arbitration agreement lacks mutuality and therefore violates Minimum Standard of Fairness Number 1(a) (requiring arbitration clause "be reciprocally binding on all parties"). *See,* Sec. IV.B.2.a, *infra*. Finally, by requiring the arbitration take place in San Francisco, California, *see* 2022 TOS at ¶ 17.1, the arbitration agreement runs afoul of Minimum Standard of Fairness Number 5, which requires hearings take place in the consumer's hometown area.[8]

Because the arbitration agreement does not comply with the JAMS Minimum Standards, no arbitration can proceed before JAMS—a reality of which OKCoin must have (or at least should have) been aware as a sophisticated party who drafted the agreement. An average consumer who does not have legal training and familiarity with JAMS' various policies and rules would not know of the existence of the Minimum Standards of Fairness or be able to readily ascertain whether the arbitration agreement complied.

The surprise is further compounded at the next step of the analysis. According to the arbitration agreement, if JAMS is unavailable, the arbitration will be "conducted by, and according

---

[7] *See* https://www.jamsadr.com/consumer-minimum-standards/, last visited December 21, 2022.
[8] Plaintiff Nguyen resides in San Diego, California; Plaintiff George resides in Cypress, California.

to the rules and regulations then in effect of, the [AAA]," *see* 2022 TOS at ¶ 17.1, but the agreement fails to specify which set of rules governs, let alone attach a copy of or provide a link to them. AAA maintains 56 different sets of active rules and at least seven different fee schedules on its website.[9] The user, therefore, is left to guess which rules and fee schedule apply.[10] *See Tompkins*, *supra*, 2014 WL 2903752, at *10, 12, 14-15 (arbitration agreement that referred to the "rules and auspices of the [AAA]" contained "multiple layers of ambiguity about which AAA rules govern," due to the numerous sets of potentially applicable rules and the agreement's failure to identify any specific rules). Moreover, as AAA maintains threshold requirements for administering consumer arbitrations similar to JAMS' Minimum Standards of Fairness, it is questionable whether AAA would even be available as an arbitral forum.[11]

All of this "oppresse[s] users by keeping them guessing about […] the basic arbitration framework," including "how an arbitrator [] would be chosen or what rules would apply." *Stanfield*, *supra*, 517 F. Supp. 3d at 1006. Users must jump through numerous hoops and connect and interpret legal jargon to try to grasp what they are being asked to agree to. The user is "forced to go to another source to find out the full import of what he or she is about to sign" and "must go to that effort *prior* to signing." *Harper*, *supra*, 113 Cal. App. 4th at 1406-07 (emphasis in original); *see also Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 632-33 (2015). There is substantial surprise in such an "opaque arrangement." *Tompkins*, *supra*, 2014 WL 2903752, at *14-15 (arbitration agreement was procedurally unconscionable where, *inter alia*, user had to search for unspecified AAA rules); *Stanfield*, *supra*, 517 F. Supp. 3d at 1006 (arbitration provision "highly procedurally unconscionable" under nearly identical circumstances).

---

[9] *See* AAA Rules, Forms & Fees, https://www.adr.org/Rules, last visited December 21, 2022.
[10] While many of these rules are clearly inapplicable based on their title, at least 10-12 sets of rules would appear potentially applicable to an average consumer. *See, e.g., id.*, Consumer Arbitration Rules, Non-Binding Consumer Arbitration Rules, AAA Optional Appellate Arbitration Rules, Commercial Arbitration Rules, Grievance Mediation Procedures, gTLD Dispute Resolution Procedures, Procedures for Cases under the UNCITRAL Arbitration Rules, Supplementary Rules of Class Arbitration, Supplementary Rules of Multiple Case Filings.
[11] *See* AAA, Consumer Due Process Protocol, https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf, last visited December 21, 2022.

- 9 -

The significant oppression and surprise establish a high degree of procedural unconscionability and thus even a minimal degree of substantive unconscionability is sufficient to render the entire arbitration agreement unenforceable.

2.   *Substantive Unconscionability*

Substantive unconscionability focuses on whether an arbitration provision is "'overly harsh' or generates 'one-sided results.'" *Nagrampa v. MailCoups, Inc*., 469 F.3d 1257, 1280 (9th Cir. 2006) (quoting *Armendariz*, 24 Cal. 4th at 114). Numerous harsh and one-sided provisions render OKCoin's arbitration agreement substantively unconscionable.

a)   Lack of Mutuality

"The paramount consideration in assessing substantive conscionability is mutuality." *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1281 (2004). "Requiring one party to arbitrate its claims but not the other is a paradigmatic form of substantive unconscionability under California law." *Pokorny v. Quixtar, Inc*., 601 F.3d 987, 1001 (9th Cir. 2010). Nevertheless, a contract can provide a "margin of safety" that provides the party with superior bargaining strength a type of extra protection for which it has a "legitimate commercial need" without being unconscionable as long as the "business realities" creating the special need for such an advantage are "explained in the terms of the contract or factually established." *Armendariz*, *supra*, 24 Cal. 4th at 117 (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1536 (1997)).

Here, both the arbitration provision itself as well as numerous other interrelated terms render the arbitration provision invalid for lack of mutuality. First, the arbitration provision provides that, notwithstanding the agreement to arbitrate, OKCoin may bring an action in court to collect unpaid debts owed by users. 2022 TOS at ¶ 17.1. This expressly one-sided exemption is unconscionable. *Pokorny*, *supra*, 601 F.3d at 1001. Any argument that the exemption is justified by a legitimate commercial need should be rejected, as it is neither explained in the terms of the arbitration agreement nor factually established. *See Stirlen*, *supra*, 51 Cal. App. 4th at 1536-37; *see also Cabatit v. Sunnova Energy Corp.*, 60 Cal. App. 5th 317, 325 (2020) (finding there was no legitimate commercial need that justified exemption allowing company, but not customers, to litigate claims for unpaid debts in court). Nor does the potential existence of user debts "tend

- 10 -

logically to support giving [OKCoin] access to the courts while denying the [users] the same privilege" because small monetary disputes are easily resolved through arbitration. *Id.*

Second, the arbitration provision provides that a party can bring an action in court to protect certain intellectual property rights ("IP claims"). 2022 TOS at ¶ 17. While this exemption is not expressly unilateral, it still "obviously favors" OKCoin on its face and in effect. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031 (9th Cir. 2016). OKCoin users do not retain any intellectual property rights under the TOS—for example, they do not have any rights in user-generated content or information. *See generally* 2022 TOS. OKCoin users would therefore never have a claim against OKCoin for infringement of intellectual property and thus could never benefit from the IP claim exemption. OKCoin, on the other hand, may very likely bring IP claims against its users for misappropriating or infringing on its "source code or similar proprietary or confidential data or other similar information," which is expressly prohibited by the TOS. *See* 2022 TOS at ¶ 8. The exemption therefore only benefits OKCoin. *See Ting*, *supra*, 319 F.3d at 1149 (in assessing mutuality, courts are to "examine the actual effects of the challenged provision"). The court in *Tompkins* applied the same analysis to a similar IP claims exemption but found it was not unconscionable due to case-specific facts showing that the plaintiffs there *could* benefit from the exemption. 840 F.3d at 1031. Unlike Plaintiffs here, the plaintiffs in *Tompkins*—purchasers of at-home genetic testing kits—retained IP rights under the terms of service to user-created content and their genetic information and thus stood to benefit from the IP claim exemption. *Id.* The *Tompkins* plaintiffs also failed to identify any IP claims the defendant would bring against its customers. *Id.* Here, Plaintiffs have shown the IP exemption is one-sided in OKCoin's favor. *See Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 725 (2004) (finding arbitration agreement lacked mutuality and was substantively unconscionable because exemptions for IP claims and violations of non-compete provisions, while not expressly unilateral, were nonetheless one-sided because employers were much more likely to bring such claims against employees); *see also Storms v. Paychex, Inc*, 2022 WL 2160414, at *16-17 (C.D. Cal. Jan. 14, 2022) (same).

Moreover, as with the debt collection exemption, the one-sided exemption for IP claims is not justified by a commercial business need either explained in the arbitration agreement itself or

established factually. *See Stirlen*, *supra*, 51 Cal. App. 4th at 1536-37 (unilateral carve-out for IP claims could not "be justified by the need for provisional remedies"). These two substantively unconscionable exemptions are enough to render the arbitration agreement severely imbalanced. *See Storms*, 2022 WL 2160414, at *16. But this is just the tip of the iceberg.

Elsewhere in the TOS, OKCoin grants itself a variety of unilateral non-arbitration remedies that effectively exempt from arbitration all other claims OKCoin would ever realistically have against its users. For example, OKCoin expressly grants itself the right to "prosecute" and bring "legal action" against its users if they violate any of the Terms of Service. *See* 2022 TOS at ¶ 9.4 (if OKCoin suffers a loss as a result of the "breach of these Terms by you, [OKCoin] has the right to recover from you via **legal actions** or other means **whether pursuant to these Terms or otherwise**."); ¶ 9.5 ("If a user violates any obligation above, as determined at our sole discretion, the Party has the right to take all necessary measures directly, including but not limited to…**prosecution**."); ¶ 3.2 (in the event OKCoin determines, at its sole discretion, that a user has violated the TOS, it "reserve[s] the right to take necessary action, including, but not limited to…**commencing legal action against you**") (emphasis added in all).[12] These provisions "clearly contemplate[] a lawsuit in court, but only by [OKCoin], not by the user." *Stanfield*, *supra*, 517 F. Supp. 3d at 1007 (similar term located outside the arbitration provision granting drafting party the right to take "appropriate legal action" supported finding that arbitration provision was unilateral).

OKCoin also gives itself the right to suspend or terminate a user's account, freeze or lock the funds and assets in their OKCoin account, and suspend or terminate their access to the OKCoin website, all with immediate effect and for any reason at its sole discretion. 2022 TOS, at ¶¶ 1.7, 2.2, 3.2, 4.5, 4.6, 8. Essentially, OKCoin can do anything it wants to remedy problems it has with its users. Users, on the other hand, are forced into formal arbitration should they have a dispute

---

[12] As a threshold matter, the Court may properly consider these terms even though they are outside the arbitration provision because they effect the mutuality of the arbitration clause itself, which Plaintiffs specifically challenge here. *See Stanfield*, *supra*, 517 F. Supp. 3d at 1007-08 (in finding arbitration provision lacked mutuality, court looked at terms located elsewhere in Terms of Service that effectively exempted defendant from obligation to arbitrate); *Tompkins*, *supra*, 840 F.3d at 1032 (court may consider challenges based on general contract provisions when plaintiff argues they render the arbitration agreement unconscionable) (citing *Rent-A-Center, W., Inc v. Jackson*, 561 U.S. 63, 71, 74 (2010)).

with OKCoin, including if they contend that OKCoin acted improperly or damaged them by exercising any of these unilateral "remedies." This lack of mutuality is substantively unconscionable. *Stanfield*, *supra*, 517 F. Supp. 3d at 1008. There is also no legitimate business need justifying these numerous instances where OKCoin can protect its rights outside of arbitration while the user cannot. Monetary disputes (like those expressly exempted only for OKCoin) are well suited for resolution after the fact. And any argument that OKCoin must respond quickly to potentially unlawful conduct or cyber-security threats ignores that OKCoin could take the least restrictive action necessary and still hold itself to the same dispute resolution processes imposed on users. *See Stirlen*, *supra*, 51 Cal. App. 4th at 1536-37 (unilateral carve-out for IP claims could not "be justified by the need for provisional remedies").

The OKCoin TOS excludes <u>numerous</u> types of disputes from OKCoin's obligation to arbitrate. The cumulative effect of these exclusions is to exempt from arbitration every area where OKCoin might initiate a dispute with its users, either expressly (as with IP claims, debt collection efforts, and users' violations of its terms and policies) or in effect by arming OKCoin with unilateral remedies that allow it to avoid formal action altogether. This is unconscionable. *See Armendariz*, *supra*, 24 Cal. 4th at 87 ("the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself"); *see also Ferguson v. Countrywide Credit Indust., Inc.*, 298 F.3d 778, 785 (9th Cir. 2002) ("unfairly one-sided" for drafting party to impose arbitration selectively on the types of claims likely brought against it); *Fitz*, *supra*, 118 Cal. App. 4th at 725 ("lack of basic fairness" where most disputes likely to be initiated against weaker party "need not be arbitrated"). The pervasive lack of mutuality here is strong evidence of substantive unconscionability and, as discussed further below, cannot be cured through severance.

> b) <u>30-Day Notice Requirement Impermissibly Limits Statute of Limitations</u>

The arbitration clause also includes a term unconscionably shortening a user's statute of limitations. Per the TOS, users can only pursue claims against OKCoin via arbitration, but a claim may proceed to arbitration only if notice is provided within 30 days of when the dispute arose and then only if no informal resolution is reached. 2022 TOS at ¶ 17. On its face, the 30-day notice

- 13 -

requirement appears bilateral, requiring parties "notify each other" of any dispute. *Id*. But, as stated above, OKCoin reserves for itself the right to take virtually any remedy it deems necessary for any reason "without notice." *See, e.g.*, 2022 TOS at ¶ 2.2. Thus, the 30-day notice requirement is bilateral only in appearance, not in effect. "[A] unilateral reduction in the statute of limitations is an indicator of substantive unconscionability." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1001 (9th Cir. 2010).

Besides its one-sidedness, the 30-day notice requirement is unconscionable because it is an unrealistically short procedural burden for a user. By the time a user has time to detect misconduct, determine whether OKCoin bears responsibility, consult an attorney to make an informed decision of her options, and send the notice, her chance to arbitrate will have long since passed. This stands in stark contrast to the 3-year statute for Plaintiffs' CLRA claims and 4-year statute for Plaintiffs' UCL and FAL claims. "While parties to an arbitration agreement may agree to shorten the applicable limitations period for bringing an action, a shortened limitations period must be reasonable." *Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 731 (2017). Courts regularly find that terms shortening a statute of limitations to periods far longer than 30 days are unreasonably short and, therefore, substantively unconscionable. *Ali v. Daylight Transp., LLC*, 59 Cal. App. 5th 462, 478 (2020) (120 days); *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1105 (2021) (1 year); *Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277, 291 (2016) (1 year).

Moreover, the 30-day notice requirement is unconscionable because it is impossibly vague. A wronged user does not know from the clause whether she must notify OKCoin of the dispute in writing; whether notification must be through OKCoin's chat feature, by email, or by some other means; to what address or department notice must be directed; what information must be included in the notice; and whether notice must be acknowledged by OKCoin to be effective. When it is not clear how a user can satisfy a procedural requirement, the requirement is unconscionable. *Marron v. HealthSource Glob. Staffing, Inc.*, 2019 WL 4384287, at *8 (N.D. Cal. Sept. 13, 2019). Any attempt by OKCoin to waive this requirement should be rejected. *See Stirlen*, *supra*, 51 Cal. App. 4th at 1535-1536 ("No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it."); *Armendariz*, *supra*, 24 Cal. 4th at 125 (rejecting

1    defendant's after-the-fact attempt to waive unconscionable terms).

2              c)   <u>One-sided Informal Resolution Requirement</u>

3         The arbitration agreement's pre-arbitration informal resolution requirement also confers an

4    unfair advantage to OKCoin. Before filing an arbitration, a user must attempt to resolve any claim

5    through "informal resolution." 2022 TOS at ¶ 17. There is no explanation of what steps this process

6    involves or how long it may take. What is clear, however, is that this is a one-sided obligation. The

7    clause first states that "[y]ou and the Party" will notify each other of disputes; but then states, "you

8    will attempt informal resolution," imposing the obligation on the user alone. *Id*. Even if one were

9    to read the provision generously as creating a bilateral requirement, when read in the context of

10   the agreement's other terms, the obligation is obviously one-sided in effect. As discussed above,

11   the TOS permits OKCoin to take any number of remedies it deems necessary, at any time and

12   without notice. *See* Sec. IV.B.2.a. These one-sided powers grant OKCoin authority to resolve

13   disputes in its favor with no "informal resolution" process (or indeed any process) whatsoever.

14        Users, meanwhile, must comply with OKCoin's nebulous requirement for pre-arbitration

15   informal resolution without knowing what is required of them. Like the 30-day notice requirement,

16   the informal resolution requirement is impossibly vague. A wronged user does not know from the

17   clause how long after notifying OKCoin she must wait to initiate informal resolution, how to

18   initiate informal resolution, or who or what determines when the process has been exhausted.

19   *Marron, supra,* 2019 WL 4384287, at *8 (unclear procedural requirements are unconscionable).

20   Ostensibly, users are, at a minimum, required to provide OKCoin with information supporting

21   their claim. But nothing obligates OKCoin to share with the user the information it possesses and

22   may use to evaluate it. Additionally, there is no outer time limit on this process beyond which the

23   user is alleviated from their obligation or deemed to have satisfied it. Finally, there is no tolling of

24   any limitations period while the user goes through this undefined process. 2022 TOS at ¶ 17.

25        Courts have repeatedly found one-way pre-arbitration requirements to be substantively

26   unconscionable. *See Nyulassy*, *supra*, 120 Cal. App. 4th at 1282-83 (finding one-sided pre-

27   arbitration dispute resolution requirement substantively unconscionable because it lacked

28   mutuality and allowed the defendant a "'free peek' at plaintiff's case, thereby [conferring] an

advantage [on defendant] if and when plaintiff were to later demand arbitration"); *Pokorny*, 601 F.3d at 998-99 (same); *Dunham v. Env't Chemmical Corp.*, 2006 WL 2374703, at *8 (N.D. Cal. Aug. 16, 2006) ("one-sided duty to exhaust pre-arbitration remedies […] adds to the contract's substantive unconscionability by permitting [the defendant] to preview [the plaintiff's] claims"); *Zullo v. Sup. Ct.*, 197 Cal. App. 4th 477, 487 n.4 (2011) (no tolling during pre-dispute period shows substantive unconscionability) (citing Cal. Gov't Code § 12965(d), (e)).

Here, the pre-arbitration informal resolution term is expressly one-sided and unreasonably favorable to OKCoin. As a result, only OKCoin is afforded an opportunity to resolve complaints against it before having to face the financial obligations of arbitration. And only OKCoin gets the benefit of a "free peek" of the user's claim and legal theories with an indefinite review period during which OKCoin can assess the complaint and how to respond to it based on information only it has. Users, on the other hand, are not given any opportunity to cure prior to OKCoin initiating legal action or exercising any of the other unilateral remedies that it reserves for itself. All these features are unconscionable. *See Carver v. JFK Mem'l Hosp., Inc.*, 2020 WL 6269268, at *6 (Cal. Ct. App. Oct. 26, 2020) (finding substantively unconscionable a provision that required only employees to engage in a multi-step pre-arbitration process that would give the employer a "free peek" at claims); *Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 635 (2015) (same); *Carmona v. Lincoln Millenium Car Wash, Inc.*, 226 Cal. App. 4th 74, 89 (2014) (finding substantively unconscionable a term that subjected employees to mandatory pre-arbitration disclosures while "employer ha[d] no corresponding obligation").

There is no reasonable justification for the one-sidedness of this requirement. "A fair agreement would impose the same [requirements] upon both parties." *Zullo*, *supra*, 197 Cal. App. 4th at 487. The burden imposed by OKCoin is unfair and appears designed only to deter users from making claims.

### d)   OKCoin's Unilateral, Discretionary Right to Consolidate Arbitration Demands

The arbitration clause also includes a facially one-sided term allowing OKCoin to consolidate multiple arbitrations into one, while prohibiting users from coordinating their demands against OKCoin. The user must bring her claims only in an "individual capacity" and not in any

- 16 -

1  "collective action."   2022 TOS at ¶ 17.1. OKCoin, however, can "in its sole discretion …

2  consolidate individual claims in a single arbitration proceeding before a single arbitrator." *Id.* This

3  provision prohibits users from coordinating where strategically beneficial for them but allows

4  OKCoin to force consolidation when doing so is strategically beneficial to it. This degree of one-

5  sidedness here exceeds "a simple old-fashioned bad bargain" and instead rises to  being

6  "unreasonably favorable to the more powerful party." *Sanchez*, *supra*, (2015) 61 Cal. 4th at 911.

7       As background, there is no other context where a defendant can force plaintiffs to jointly

8  litigate the entirety of their claims. For example, when a court deems cases as "related" under

9  federal rules, it simply assigns various cases to the same judge and aligns pretrial schedules. *See,*

10  *e.g.*, N.D. Cal. Civ. LR 3-12. Where a court consolidates cases under Rule 42, the court maintains

11  discretion as to which matters ought to be joined and which may require separate trials. Fed. R.

12  Civ. P. 42. Where cases are centralized in Multi-district Litigation, they are consolidated for

13  pretrial purposes only. 28 U.S.C. § 1407. OKCoin's consolidation procedures, while impenetrably

14  vague, apparently depart from these judicial corollaries by abandoning individual merits

15  determinations completely. Even arbitral forums that allow for consolidated or "mass" arbitration

16  do not strip claimants of this right. *See*, *e.g.*, FedArb's "MDL Framework"; IICPR's "Mass Claims

17  Protocol"; NAM's "Mass Filing Supplemental Dispute Resolution Rules and Procedures."[13]

18       JAMS, which is OKCoin's preferred forum, permits consolidation in certain

19  circumstances, but still requires individual decisions for each individual plaintiff. *See* JAMS

20  Streamlined Arbitration Rules & Procedures Rules 6(e)(iii) & 19(g) (arbitral award must include

21  a written statement of the disposition of "*each claim* and the relief, if any, as to *each claim*"

22  (emphasis added)).[14] AAA, OKCoin's back-up forum, similarly requires an arbitrator to "decide

---

[13]  Available   at   https://www.fedarb.com/framework-for-mass-arbitration-proceedings-adr-mdl/
(FedArb);        https://www.cpradr.org/resource-center/rules/arbitration/employment-arbitration-
procedure/_res/id=Attachments/index=4/ERMCP%20V2.1%20September%202022.pdf (IICPR);
https://www.namadr.com/content/uploads/2021/12/SupplementalRules12.22.21.pdf   (NAM),   all
last visited Dec. 21, 2022.

[14] https://www.jamsadr.com/rules-streamlined-arbitration/, last visited Dec. 21, 2022.

OPPOSITION TO DEFENDANT OKCOIN USA INC.'S            Case No: 4:22-cv-06022-KAW
MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS

each case on its own merits," even in mass arbitration.[15] OKCoin contravenes established norms and its own forums' rules by requiring that all claims it seeks to consolidate be bound by a single decision. 2022 TOS at ¶ 17.1 (arbitral rules shall apply except "as modified by this agreement").

In addition to the serious due process concerns described above, the consolidation clause is yet another aspect of the arbitration agreement that is totally opaque to users. At the outset of a demand, a user has no way of knowing whether she must proceed individually or under the consolidated arbitration mechanism OKCoin has unilateral power to invoke. Worse, neither the arbitration provision nor the JAMS rules provide even basic rules or procedures for consolidation. Users are left in the dark as to what criteria determines whether demands can be consolidated, whether they can oppose OKCoin's request for consolidation, how many demands can be consolidated into a single proceeding, or whether newly filed demands can be added to an advanced and already consolidated proceeding. There are also no details regarding discovery procedures in consolidated arbitration. *See generally* 2022 TOS at ¶ 17.1; JAMS Streamlined Arbitration Rules & Procedures Rule 6(e). Alarmingly, it is unclear whether OKCoin can select the arbitrator before whom claims would be consolidated. If OKCoin can "seek to consolidate" claims before its preferred arbitrator, it could conceivably have all claims moved before that arbitrator and obtain an insurmountable strategic advantage.

Consolidation will also confer unreasonably one-sided benefits to OKCoin in the way it will save in administrative fees and litigation costs. Under typical circumstances, assuming JAMS is the arbitral forum, OKCoin would spend approximately $3,800 on administrative and professional fees per arbitration. Erickson Decl., at ¶ 9. Depending on the timing and procedure of consolidation, OKCoin could spend approximately the same amount to handle 100 claims—a savings of 99 percent—as OKCoin's financial obligation vis-à-vis one "consolidated proceeding" is roughly the same as one individual claim. *Id.* On the other hand, it is unclear whether users, who pay $250 each to file a claim, would save any money at all through consolidation. *Id.*

---

[15] *See* AAA "Supplementary Rules for Multiple Case Filings," available at https://www.adr.org/sites/default/files/Supplementary_Rules_MultipleCase_Filings.pdf, last visited December 21, 2022.

1    Similarly, consolidation would likely allow OKCoin to engage in limited discovery with a

2  single consolidated group of claimants rather many unique claimants—a dramatic cost cutter. It is

3  unclear whether users would receive any countervailing benefit in a consolidated arbitration or

4  whether they would have to engage in just as much costly discovery as if their claims were

5  unconsolidated. This lack of transparency "oppresse[s] users by keeping them guessing about"

6  these (and other) aspects of consolidated arbitration. *Stanfield*, *supra*, 517 F. Supp. 3d at 1006

7  (arbitration agreement was substantively unconscionable where it failed to provide procedural

8  details). Opaque as to whether, when, and how consolidated arbitration will apply, the terms

9  "loom[] over any grievance raised by the user as a heavy unknown" and drastically weaken the

10  ordinary user's remedy. *Id.*

11    e)   Unilateral Modification Clause

12    California law holds that a clause granting one party the sole and unqualified right to

13  modify a contract's terms is substantively unconscionable as it "proscribes [the weaker party's]

14  ability to consider and negotiate the terms of her contract." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d

15  1165, 1179 (9th Cir. 2003); *see also Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*, 2018 WL

16  4599645, at *9 (N.D. Cal. Sept. 25, 2018) (unilateral modification provision withheld bargaining

17  power from weaker party and was therefore unconscionable); *Ingalls v. Spotify USA, Inc.*, 2016

18  WL 6679561, at *6 (N.D. Cal. Nov. 14, 2016) (affirming *Ingle* and finding provision allowing

19  defendant to modify arbitration agreement unconscionable).

20    OKCoin's TOS reserve for it the right to "vary these Terms immediately without notice."

21  2022 TOS at p. 2. A user agrees to the entirety of the agreement, including any modifications to

22  the arbitration clause, simply by continuing to use OKCoin. *Id.*, at ¶ 1.6 ("[b]y continuing to use

23  the Service(s), you agree to the Terms and any other Terms added subsequently"). To know what

24  terms govern, a user must read the terms prior to and during all periods of use and must

25  immediately cease use if any term is added to which they do not consent. In practical effect, this

26  renders the agreement illusory and, thus, both procedurally and substantively unconscionable.

27    There are instances where courts uphold unilateral modification clauses. *See, e.g.,*

28  *Gonzalez v. Interstate Cleaning Corp.*, 2020 WL 1891789, at *6 (N.D. Cal. Apr. 16, 2020);

*Campos v. JPMorgan Chase Bank, NA*, 2019 WL 827634, at *10 (N.D. Cal. Feb. 21, 2019). The key distinction between such cases and the case at bar is a reasonable limitation on the right to change the agreement. *Gonzalez*, 2020 WL 1891789, at *6 (changes did not apply to pending claims and were effective only upon 90 days' written notice); *Campos*, 2019 WL 827634, at *10 (changes only effective after 30 days' notice and "on a going forward basis"). OKCoin, on the other hand, allows itself an unlimited right to modify the terms of the arbitration agreement at any time, to any matter, retroactively or prospectively, with no notice whatsoever. Even in cases where courts have found that a unilateral modification clause did not, by itself, render the arbitration agreement unenforceable as a whole, they still acknowledged, "a unilateral modification provision itself may be unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016). OKCoin's unlimited power to modify the arbitration agreement brings this case "closer to *Ingle* than to *Tompkins*." *Ingalls*, *supra*, 2016 WL 6679561, at *7 (finding unilateral modification clause was substantively unconscionable as applied to arbitration provision due to burdensome procedure required to reject unilateral changes to arbitration provision).

In light of the numerous unenforceable terms, the arbitration agreement contains a high degree of substantive unconscionability. Combined with the high degree of procedural unconscionability, the arbitration agreement is unenforceable as a whole.

### 3.   *Severance Is Inappropriate*

Despite the existence of a severability clause, the Court should refuse to enforce the agreement in its entirety for three reasons. First, in light of the multiple defects, unconscionability permeates the agreement. *Armendariz*, *supra*, 24 Cal. 4th at 124-125. Second, in order to fully remove all unconscionable aspects of the arbitration agreement (primarily the unconscionable lack of mutuality between the parties), the Court would need to strike multiple provisions as well as augment the agreement, which is it not authorized to do. *Id*. Finally, as a result of the wide-ranging unconscionable terms and lack of mutuality, the central purpose of the arbitration provision is tainted with illegality. *Id*. The Court should therefore refuse to enforce the arbitration agreement in its entirety.

"Where an arbitration agreement contains more than one unlawful provision, this weighs

against severance and indicates a systematic effort to impose arbitration…not simply as an alternative to litigation, but as an inferior forum that works to the stronger party's advantage." *Reyes v. United Healthcare Servs., Inc.*, 2014 WL 3926813, at *6 (C.D. Cal. Aug. 11, 2014) (quoting *Armendariz*, *supra*, 24 Cal. 4th at 124). Here, in addition to a high degree of procedural unconscionability, there are at least **six** unenforceable terms: two one-sided exemptions for debt collection claims and IP claims; 30-day notice requirement; one-sided pre-arbitration informal resolution requirement; discretionary consolidation provision; and an unbridled unilateral modification clause. This case is therefore at the extreme end of the spectrum of cases analyzing severability. *See, e.g., Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1006 (9th Cir. 2021) (refusing to sever three terms); *Davis v. Kozak*, 53 Cal. App. 5th 897, 918 (2020) (refusing to sever two terms); *Carmona*, *supra*, 226 Cal. App. 4th at 90 (refusing to sever unconscionable terms regarding, *inter alia*, asymmetrical nature of agreement and a provision requiring only one party to disclose their claims pre-arbitration); *LaChapelle v. Omni Hotels Mgmt. Corp*., 2021 WL 3373337, at *4 (N.D. Cal. Aug. 3, 2021) (severing a single term); *Brown v. Dow Chem. Co.*, 2019 WL 484211, at *4 (N.D. Cal. Feb. 7, 2019) (severing a single term). Numerous additional terms in the TOS would also need to be severed to make the arbitration agreement sufficiently mutual to be enforceable. *See* Sec. IV.B.2.a., *supra*. Unconscionability permeates.

Severance is also inappropriate where the agreement "lack[s] mutuality and the severance of any discrete provision [will not] remove[] the taint of unconscionability from the agreement." *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 427 (N.D. Cal. 2018); *see also Armendariz*, *supra*, 24 Cal. 4th at 124-125. As shown above, the arbitration agreement lacks mutuality as a result of multiple one-sided exemptions and numerous non-arbitration remedies granted only to OKCoin. *See* Sec. IV.B.2.a. The lack of mutuality permeates the agreement and cannot be removed with the severance of a single term. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005-06 (9th Cir. 2010) (refusing to enforce entire agreement because, although there were some easily severable terms, the lack of mutuality that permeated the agreement was too pervasive to remove with the severance of a single term); *see also Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1009 (N.D. Cal. 2015) (unwilling to enforce agreement because the three unconscionable

provisions were "too numerous and too important to be severed from the whole," including a provision that exempted certain claims by the employer from arbitration).

Additionally, in order to fully remove the taint of the unconscionable lack of mutuality, the Court "would have to, in effect, reform the contract, by augmenting it with additional terms"—namely, terms that would impose the obligation on OKCoin to arbitrate other claims it currently exempts from arbitration. *Armendariz*, *supra*, 24 Cal. 4th at 124-125. This exceeds the Court's authority, even if OKCoin were to acquiesce to such a modification at this point. *Id.* at 125. As the court in *Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) explained, such a course of action would "substantively rewrite the arbitration clause, as distinct from simply not enforcing it." *Id.* at 1412. At the time the TOS was formed, OKCoin would likely never "have agreed to an arbitration clause" if it required all the exempted claims be arbitrated. That OKCoin may agree to arbitrate those claims *now* "merely bespeaks an attempt to pick and choose forums after the fact." *Id*.

Like the agreement's lack of mutuality, the unconscionability caused by the agreement's opaque and deceptive language regarding the arbitral forum and applicable rules (*see* Sec. IV.B.1.b, *supra*) cannot be cured through severance. It would require the Court to add language specifying the governing rules and applicable arbitral forum—something it may not do. *Armendariz*, *supra*, 24 Cal. 4th at 124-25.

The breadth and depth of unfair terms also shows that the unconscionability is central to the main purpose of the arbitration agreement, which is not simply to provide an equal, alternative forum to be utilized by both parties, but rather, to force OKCoin users to pursue their claims in a forum specially designed by OKCoin to ensure it always has the upper hand, while allowing claims by OKcoin to proceed in court. *Armendariz*, *supra*, 24 Cal. 4th at 124. The numerous terms infect nearly every aspect of the arbitration agreement, appear designed to deter users from exercising their rights, and evince an intent to use arbitration as a weapon. This renders severance inappropriate. *Id.*; *see also Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1584 (2009). The Ninth Circuit has explained that district courts properly deny a request to sever an unconscionable term if severance would encourage persons to "overreach" when drafting an agreement with the fallback expectation that they could later "whittle down to the least offensive agreement if faced

with litigation." *Lim*, *supra*, 8 F.4th at 1003-04. Here, OKCoin clearly sought to stack the deck against its users by imposing an unreasonably short notice requirement and one-sided pre-arbitration resolution requirement as preconditions to arbitration and then further tilting the scales in its favor by keeping users in the dark as to what forum, rules, fee schedule, discovery, and other procedures they are agreeing to, while retaining for itself the right to litigate in court essentially any issue it may have with a user. Severing these unconscionable provisions now would be "woefully unfair" to Plaintiffs given OKCoin drafted and stood to benefit from them. *Flores v. Transamerica HomeFirst, Inc*., 93 Cal. App. 4th 846, 857-58 (2001). The Court should not indulge such an abuse of the severability doctrine.

In light of the multiple unconscionable provisions, inability to remove the unconscionable lack of mutuality through severance alone, and evidence of OKCoin's intent to weaponize the arbitral forum, the Court should refuse to enforce the arbitration agreement wholesale.

## C. 2021 Version Is Unconscionable

Even if the Court finds the 2021 TOS is the applicable version of the agreement, OKCoin's motion should still be denied, as the 2021 TOS is unconscionable for nearly identical reasons as set forth above with respect to the 2022 TOS. The 2021 TOS is procedurally unconscionable for all the same reasons the 2022 TOS is procedurally unconscionable: First, it is a contract of adhesion, presented on a take-it-or-leave-it basis, with no ability to negotiate or opt out by the user, and which may be modified by OKCoin in any way at any time. Nguyen Decl., at ¶¶ 3-6; George Decl., at ¶¶ 3-6; 2021 TOS at p. 6; *see also* Sec. IV.B.1, *supra*, at p. 5. Second, the 2021 TOS presents the same degree of surprise as the 2022 TOS based on the opacity and lack of informed consent created by its language designating the arbitral forum and applicable rules. *Compare* 2021 TOS at ¶¶ 17-17.1 *with* 2022 TOS at ¶¶ 17-17.1; *see* Sec. IV.B.1, *supra*, at p. 5-9.

With respect to substantive unconscionability, the 2021 TOS contains all the same unenforceable terms as the 2022 TOS with the exception of the discretionary right to consolidate arbitration demands. *See* 2021 TOS at ¶¶ 17-17.1. This means the 2021 TOS has at least five unconscionable terms: two one-sided exemptions for debt and IP claims (plus numerous other terms in the TOS that render it unilateral), *see* Sec. IV.B.2.a; a 30-day notice requirement, *see* Sec.

IV.B.2.b; a one-sided informal resolution requirement, *see* Sec. IV.B.2.c; and a unilateral modification clause, *see* Sec. IV.B.2.e. While the unilateral modification clause in the 2021 TOS does not expressly allow OKCoin to make changes without notice (as the 2022 TOS does), its "notice" requirement carries no specific obligations whatsoever to apprise users of changes to the TOS. *See* 2021 TOS at p. 6 ("notice" of changes to terms may be effectuated by posting the updated version on the website, or by emailing users, or "by any other means" that OKCoin deems appropriate in its sole discretion).

Under these circumstances, severance is inappropriate. Even absent the discretionary consolidation provision, the 2021 TOS is permeated with unconscionability as evidenced by the fact that the Court would need to strike at least five terms. As with the 2022 TOS, the Court would also need to augment the agreement to render it sufficiently bilateral. Finally, to sever the multiple defects now would grant OKCoin the undeserved benefit of having initially drafted an arbitration agreement intended to make the arbitral forum a weapon without fear of consequence. As such, severance would not further the interests of justice. *See* Sec. IV.B.3, *supra* (setting forth detailed argument and legal authority against severability under these circumstances).

## V.  <u>CONCLUSION</u>

For all the reasons stated herein, the Court should deny OKCoin's Motion.

Dated this December 21, 2022.          Erickson Kramer Osborne, LLP

                                        /s/ Julie C. Erickson
                                        Julie Erickson
                                        Elizabeth Kramer
                                        Kevin Osborne
                                        Attorneys for Plaintiffs Michael Nguyen and Nader George