VENABLE LLP
Steven E. Swaney (SBN 221437)
seswaney@venable.com
Jean-Paul P. Cart (SBN 267516)
jpcart@venable.com
Antonia I. Stabile (SBN 329559)
aistabile@venable.com
Christopher Brown (SBN 332001)
cbrown@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone:     415.653.3750
Facsimile:     415.653.3755

Attorneys for Defendant OKCOIN USA INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NGUYEN and NADER GEORGE, individually and on behalf of other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>OKCOIN USA INC., and DOES 1-10<br><br>Defendant | Case No. 4:22-cv-06022-KAW<br><br>[Removed from Superior Court of California, County of San Francisco, Case No. CGC-22-601712]<br><br>**DEFENDANT OKCOIN USA INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>**CLASS ACTION**<br><br><u>Hearing</u><br>Date:        February 2, 2023<br>Time:        1:30 p.m.<br><br>Action Filed:   September 9, 2022<br>Removal:        October 12, 2022 |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.     THE 2021 TERMS OF SERVICE APPLY ........................................................... 2

III.    OKCOIN'S 2021 TERMS OF SERVICE ARE NOT
        UNCONSCIONABLE ............................................................................................. 4

        A.      Plaintiffs Fail to Show Procedural Unconscionability ..................................... 4

                1.      There Nothing Uniquely "Oppressive" About Okcoin's
                        TOS ..................................................................................................... 4

                2.      There is No Surprise in the Terms of Service .................................. 5

        B.      Plaintiffs Fail to Show Substantive Unconscionability ................................... 9

                1.      There is No Material Lack of Mutuality in the Terms of
                        Service ................................................................................................ 9

                2.      The "Informal Dispute Resolution" Provision Is Not
                        Unconscionable .............................................................................. 12

                3.      The Modification Clause Is Not Unconscionable ........................... 13

IV.     LIKE THE 2021 TOS, OKCOIN'S 2022 TOS ARE NOT
        UNCONSCIONABLE ........................................................................................... 14

IV.     ANY MINIMAL UNCONSCIONABILITY CAN BE CURED BY
        SEVERANCE ....................................................................................................... 15

VII.    CONCLUSION ..................................................................................................... 15

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abreu v. Slide, Inc.*,
   2012 WL 2873772 (N.D. Cal. July 12, 2012)..........................................................................13

*Ajamian v. CantorCO2e, L.P.*,
   203 Cal. App. 4th 771 (2012) ...................................................................................................9

*Armendariz v. Foundation Health Care Psychare Servs., Inc.*,
   24 Cal.4th 83 (2000) ...............................................................................................................15

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
   612 F. App'x 430 (9th Cir. 2015) .......................................................................................2, 14

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)..................................................................................................................4

*Baltazar v. Forever 21, Inc.*,
   62 Cal. 4th 1237 (2016) ..........................................................................................2, 7, 10, 11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ..................................................................................................8

*Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*,
   2014 WL 116442 (N.D. Cal. Jan. 13, 2014) ............................................................................6

*Cabatit v. Sunnova Energy Corp.*,
   60 Cal. App. 5th 317 (2020) ............................................................................................11, 12

*Carlson v. Home Team Pest Defense, Inc.*,
   239 Cal. App. 4th 619 (2015) ...................................................................................................4

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
   94 F. Supp. 3d 1078 (C.D. Cal. 2015) .....................................................................................3

*Cohen v. CBR Sys., Inc.*,
   --- F.Supp.3d ---, 2022 WL 4087507 (N.D. Cal. Sept. 6, 2022)............................................11

*Denson v. Keplr Vision, LLC*,
   2021 WL 3419237 (S.D. Cal. Aug. 5, 2021) ..........................................................................13

*Dunham v. Env't Chem. Corp.*,
   2006 WL 2374703 (N.D. Cal. Aug. 16, 2006) .......................................................................13

*Garcia v. Comcast Cable Communs. Mgmt. LLC*,
   2017 WL 1210044 (N.D. Cal. Mar. 31, 2017)........................................................................13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

*Han v. Synergy Homecare Franchising, LLC*,
   2017 WL 446881 (N.D. Cal. Feb. 2, 2017) (Westmore, J.)................................5, 10

*In re Holl*,
   925 F.3d 1076 (9th Cir. 2019) ...................................................................5, 7

*Int'l Markets Live, Inc. v. Thayer*,
   2022 WL 4290310 (D. Nev. Sept. 16, 2022) ...........................................3

*Jackson v. Amazon.com, Inc.*,
   559 F. Supp. 3d 1132 (S.D. Cal. 2021)..................................................3

*Merkin v. Vonage Am., Inc.*,
   639 Fed. Appx. 481 (9th Cir. 2016) ......................................................5

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) ...........................................................11, 13

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) ...................................................... *passim*

*Ramirez-Baker v. Beazer Homes, Inc.*,
   636 F. Supp. 2d 1008 (E.D. Cal. 2008).................................................13

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (2015) ..................................................................2, 5, 6, 10

*Sanfilippo v. Match Grp. LLC*,
   2021 WL 4440337 (9th Cir. 2021) .....................................................14

*Sperring v. LLR, Inc.*,
   2019 WL 13240893 (C.D. Cal. July 23, 2019).......................................9

*Stirlen v. Supercuts, Inc.*,
   51 Cal. App. 4th 1519 (1997) .............................................................11

*Stover v. Experian Holdings, Inc.*,
   978 F.3d 1082 (9th Cir. 2020) ......................................................1, 2, 3

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
   59 F. Supp. 2d 1060 (S.D. Cal. 1999)....................................................3

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016) .....................................................2, 10, 11, 13

*Trout v. Comcast Cable Comms., LLC*,
   2018 WL 4638705 (N.D. Cal. Mar. 15, 2018).........................................5

*Turng v. Guaranteed Rate, Inc.*,
   371 F. Supp. 3d 610 (N.D. Cal. 2019) ...................................................7

*Ventura v. 1st Fin. Bank USA,*
    2005 WL 2406029 (N.D. Cal. Sept. 29, 2005) ........................................................................11

*Wiseley v. Amazon.com, Inc.,*
    709 F. App'x. 862 (9th Cir. 2017) ........................................................................6, 8

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

## I.      INTRODUCTION

Plaintiffs' opposition to Okcoin's Motion to Compel Arbitration presents a scattershot of misleading and inconsistent arguments that provide no basis for this Court to set aside Plaintiffs' clear and unequivocal agreements to arbitrate their claims. At bottom, the Opposition is an exercise in gamesmanship and misdirection that lacks internal coherence and reflects a nakedly attorney-driven effort to avoid arbitration. Federal law requires that arbitration agreements be respected, and the agreement between Plaintiffs and Okcoin should be enforced.

Okcoin's motion is based on the 2021 Terms of Service ("TOS") that it provided to Plaintiffs at the time they created their accounts, that Plaintiffs agreed to when they signed up, and that were in effect when Plaintiffs' alleged claims arose. While Okcoin amended its TOS in July 2022 shortly before Plaintiffs filed this action, it did not notify existing users of these amendments. Plaintiffs complain about this lack of notice in (identical) declarations stating they were unaware of any amendments to Okcoin's TOS and did not even know how to locate any amended TOS on Okcoin's website. Yet Plaintiffs' counsel contend that Plaintiffs are bound by those amended TOS. That is, Plaintiffs' counsel argue that Plaintiffs are bound by a version of the TOS that Okcoin does not seek to enforce and that their clients did not agree to. What's more, Plaintiffs' counsel take this position despite their own insistence that the July 2022 TOS are less favorable than the 2021 TOS. While their motivation for trying to bind their clients to a purportedly less favorable contract to which they did not agree is obvious, applicable judicial authorities foreclose that result.

Under binding Ninth Circuit authority, consumers cannot be bound by a terms-of-service amendment unless they are given specific notice of the amendment. *See Stover v. Experian Holdings, Inc.*, 978 F.3d 1082 (9th Cir. 2020). In moving to enforce the 2021 TOS that Plaintiffs were provided with, that they agreed to, and that were in effect when their alleged claims arose, Okcoin seeks to comply with the law. There is simply no question that the 2021 TOS apply here.

Nor is there any basis to conclude that the 2021 TOS—or the July 2022 amendments— are unconscionable or otherwise unenforceable. *Many* of the arguments Plaintiffs raise regarding unconscionability are directly contrary to binding California Supreme Court and Ninth Circuit

authorities. *See, e.g.*, *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015) (rejecting argument that contract was procedurally unconscionable because it did not highlight or call attention to the arbitration clause); *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1246 (2016) (rejecting argument that there was a greater degree of procedural unconscionability in arbitration agreement that did not attach the applicable arbitration rules); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031 (9th Cir. 2016) (rejecting argument that carve-out in arbitration clause for intellectual property disputes was substantively unconscionable); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 F. App'x 430, 432 (9th Cir. 2015) (rejecting argument that unilateral modification provisions are substantively unconscionable under California law). Plaintiffs apparently hope to persuade the Court by the sheer volume of their arguments, without regard to their merit. But arguments that have been conclusively rejected by the appellate courts cannot carry Plaintiffs' burden—no matter how many such arguments they raise. Similarly, Plaintiffs offer strained and contorted interpretations of the plain contractual language in an attempt to convince the Court to apply cases finding unconscionability that are simply inapplicable here.

On the bottom line, Okcoin's TOS contain a run-of-the-mill arbitration clause of the type that the California Supreme Court, the Ninth Circuit, and district courts in this Circuit have upheld and enforced time and time again. And even if there were some minor aspect of the arbitration agreement that is substantively unconscionable (there is not), the Court can—and should—sever it in accordance with the language of the TOS and well-settled precedent. Okcoin's Motion to Compel Arbitration should be granted.

## II.     THE 2021 TERMS OF SERVICE APPLY

In their Opposition, Plaintiffs contend that Okcoin's July 2022 TOS "replaced and nullified" the 2021 TOS that they agreed to when they opened their Okcoin accounts, such that the July 2022 TOS is the "only agreement relevant in this motion." Opp. at 3:8-4:10. Plaintiffs' argument is a spare two sentences (*id*. at 3:9-13), wherein they rely on two easily distinguishable cases while ignoring binding Ninth Circuit authority.

In *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1084 (9th Cir. 2020), the plaintiff agreed to the defendant's 2014 terms of service when she created her account, which stated that

"[e]ach time" a consumer "accessed . . . the . . . Product Website," they would be manifesting assent to "the then current" terms. The plaintiff accessed the "Product Website" in 2018, by which time the defendant had adopted its 2018 terms of service. *Id* at 1085. After the plaintiff sued, the defendant sought to enforce its 2018 terms of service. The district court agreed, but the Ninth Circuit reversed on this issue. It ruled that even though the 2014 terms the plaintiff agreed to contained a change-of-terms provision, the plaintiff "had no obligation to investigate whether [defendant] issued new terms without providing notice to her that it had done so." *Id*. Thus, the Ninth Circuit held that parties "must have notice of the change in contract terms" before a new set of terms is applicable, and the plaintiff had only assented to one contract –*i.e.*, the 2014 terms of service. And while the Ninth Circuit found that the 2018 terms of service did not create a contract, it enforced the 2014 terms of service that the plaintiff had agreed to—and, critically, compelled arbitration under the 2014 terms. *Id*. at 1088; *see also Jackson v. Amazon.com, Inc.*, 559 F. Supp. 3d 1132, 1136-37 (S.D. Cal. 2021) (holding the plaintiff did not agree to Amazon's updated TOS that the plaintiff did not receive, and that the original terms of service that the plaintiff had agreed to would be enforced); *Int'l Markets Live, Inc. v. Thayer*, 2022 WL 4290310, at *6 (D. Nev. Sept. 16, 2022) (same).

These authorities render Plaintiffs' reliance on *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078 (C.D. Cal. 2015) and *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1060 (S.D. Cal. 1999), misplaced. Opp. at 3. In *CarMax*, the parties did not dispute that the defendant gave proper notice to employees about a 2011 revised Terms of Service. 94 F. Supp. 3d at 1105. Based on that notice, the district court found the revised Terms applied. *Id*. at 1105. Likewise, in *Thiele*, the plaintiffs had signed four agreements containing the identical arbitration clause that the defendant sought to enforce. 9 F. Supp. 2d at 1064.

Here, Plaintiffs admit that they "opened their OKCoin accounts at a time when users were subject to the September 2021 OKCoin Terms of Service." Opp. at 2. Okcoin has submitted evidence that it advised Plaintiffs of the applicable 2021 Terms of Service and that Plaintiffs agreed to them, (Dkt. 11-1 at ¶¶ 3-5), and Plaintiffs do not deny this. While Okcoin later modified its TOS, it did not provide notice of any modifications to users who had agreed to be

1   bound by prior versions. Declaration of Anthony L. Valenzuela ("Valenzuela Decl.") at ¶ 2.

2   Thus, the evidence indisputably reflects that Plaintiffs agreed to Okcoin's 2021 TOS, and did not

3   agree to the subsequent amendments. Under these circumstances, Ninth Circuit authority is clear

4   that there is only one contract between Plaintiffs and Okcoin, and that contract—the 2021

5   TOS—is what should be enforced.

6   **III.   OKCOIN'S 2021 TERMS OF SERVICE ARE NOT UNCONSCIONABLE**

7        In California, "the party opposing arbitration must demonstrate that the contract as a whole

8   or a specific clause in the contract is both procedurally and substantively unconscionable."

9   *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). Further, federal law requires

10   courts to "place arbitration agreements on an equal footing with other contracts, and enforce them

11   according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

12        **A.   Plaintiffs Fail to Show Procedural Unconscionability**

13        Contrary to Plaintiffs' arguments, the fact that the arbitration clause in Okcoin's Terms of

14   Service is an adhesion contract "does not render it automatically unenforceable as

15   unconscionable." *Carlson v. Home Team Pest Defense, Inc.*, 239 Cal. App. 4th 619, 631 (2015).

16   Instead, "to determine whether an arbitration agreement satisfies the procedural element of

17   unconscionability, courts focus on two factors: oppression and surprise." *Id*. Plaintiffs fail to

18   carry their burden on those two factors.

19        **1.   There Nothing Uniquely "Oppressive" About Okcoin's TOS**

20        Plaintiffs' sole argument on oppression focuses on the 2022 TOS, which do not apply

21   here for the reasons just explained. Thus, Plaintiffs fail to meet their burden to show oppression.

22        Nonetheless, neither the 2021 TOS, nor the July 2022 amended TOS, are oppressive

23   beyond the inherent—and minimal—degree of oppression in any adhesion contract. And of

24   course, adhesion contracts in the realm of consumer transactions are commonplace, regularly

25   enforced, and not inherently unconscionable. *See Poublon*, 846 F.3d at 1261 (no added procedural

26   unconscionability in employment contract conditioning continued employment on acceptance).

27        Plaintiffs contends that oppression can be found vis-à-vis the provision allowing

28   unilateral amendment. This is irrelevant, as Okcoin seeks to enforce the 2021 TOS that Plaintiffs

were given, and to which they agreed. In any event, Plaintiffs misrepresent *Merkin v. Vonage Am., Inc.*, 639 Fed. Appx. 481 (9th Cir. 2016). In *Merkin*, the court expressly stated that it would "not address whether the alleged unconscionability of a unilateral modification provision is a basis for declining to sever any other unconscionable provisions in an arbitration agreement," and remanded with an order to *enforce* the underlying arbitration clause. *Id*. at 482.

### 2.      There is No Surprise in the Terms of Service

Plaintiffs' arguments on the surprise factor are similarly unavailing.

<u>First</u>, Plaintiffs argue that "while the TOS was hyperlinked on the sign-up page, nothing drew users' attention to OKCoin's arbitration requirement before (or after) they signed up for the service." Opp. at 5. But as this Court has recognized, under binding California Supreme Court authority, that Okcoin "'was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [Plaintiffs'] attention.'" *Han v. Synergy Homecare Franchising, LLC*, 2017 WL 446881, at *10 (N.D. Cal. Feb. 2, 2017) (Westmore, J.) (quoting *Sanchez*, 61 Cal. 4th at 914); *see also Trout v. Comcast Cable Comms., LLC*, 2018 WL 4634705, at *5 (N.D. Cal. Mar. 15, 2018) ("'[F]ailing to highlight' does not equal 'hide' with respect to arbitration provisions.") (quoting *Sanchez*, 61 Cal. 4th at 914).

Regardless, Okcoin's arbitration clause is not hidden: it appears under the bolded, all-caps heading "**DISPUTE RESOLUTION**" and—in the first sentence—plainly states that users and Okcoin "agree to arbitrate any dispute arising from these Terms or relating to the Service(s)." Dkt. 11-1 at ¶ 5, Ex. A at § 17. Arbitration clauses presented in this manner are not "hidden" from users. *See Han*, 2017 WL 446881, at *10 (arbitration clause under the heading "DISPUTE RESOLUTION" in contract was "clearly labeled and easily identifiable").

<u>Second</u>, Plaintiffs argue surprise because they claim—with no factual or evidentiary citation at all—the 2021 TOS were never provided to them and finding the document on Okcoin's website was like finding "a needle in a haystack." Opp. at 5-6. This is demonstrably false. Plaintiffs admit on the same page of their Opposition that "the TOS was hyperlinked on the sign-up page." Opp. at 5. As explained in Okcoin's opening brief, providing a hyperlink to the TOS containing the arbitration agreement is sufficient to avoid unfair surprise. *See In re Holl*,

1    925 F.3d 1076, 1084 (9th Cir. 2019) (the plaintiff "unequivocally assented" to terms of service

2    that were presented by hyperlink at the time of creating account on the defendant's website).

3            Nor is it difficult to find the TOS on Okcoin's webpage. Despite their tortuous effort to

4    make it appear that the TOS are concealed from users (Opp. at 5-6), the process for finding the

5    TOS on Okcoin's webpage is straightforward. Okcoin has various links at the bottom of its

6    homepage that are categorized "Product," "Company," and "Help." Valenzuela Decl. at ¶ 3, Ex.

7    A. Under the "Help" category is a link titled "Legal and Privacy." *Id*. That link takes users

8    directly to another page where, at the very top, there is a bolded heading "Service Terms," under

9    which is a hyperlink titled "Terms of Service." *Id*. at ¶ 3, Ex. B. Thus, Okcoin's TOS are only

10   two well-labeled clicks away from the homepage. Alternatively, when clicking on the "Help"

11   link on the homepage, a search field is displayed into which a user can type anything. *Id*. at ¶ 3,

12   Ex. C. A search for "terms of service" brings up a link to the TOS as the first result. *Id*. at ¶ 3,

13   Ex. D. Contrary to Plaintiffs' effort to convince the Court that the TOS are somehow difficult to

14   locate, any reasonable person can find the TOS with ease.

15           Third, Plaintiffs incorrectly argue the arbitration clause is "buried" within the TOS. Opp.

16   at 6. Not so. Incredibly, Plaintiffs contend the arbitration clause is "buried" because it "appear[s]

17   in the same size and type font as all surrounding provisions." *Id*. As discussed above, California

18   law is crystal clear that there is no requirement that arbitration clauses within contracts be set off

19   from other text or otherwise "highlighted." *Sanchez*, 61 Cal. 4th at 914. For that reason, the

20   Ninth Circuit and courts in this district refer to the fact that arbitration clauses are in the same

21   font as other provisions as evidence that they are ***not*** hidden. *See Wiseley v. Amazon.com, Inc.*,

22   709 F. App'x. 862, 864 (9th Cir. 2017) ("There is no procedural unconscionability in the

23   presentation of the arbitration clause itself, which appears in the same size font as the rest of the

24   COU, with key terms bolded.") (citing *Sanchez*, 61 Cal. 4th at 914); *see also Brookdale Inn &*

25   *Spa v. Certain Underwriters at Lloyds, London*, 2014 WL 116442, at *4 (N.D. Cal. Jan. 13,

26   2014) ("[T]he arbitration clause neither surprising nor hidden. The arbitration clause . . . is

27   printed in the same font as most of the rest of the text . . . [and] uses the same formatting scheme

28   (font, bolding, and capitalization) as do the other contractual provisions appearing in this list.").

1    <u>Fourth</u>, Plaintiffs argue unfair surprise because there was "no informed consent" to the

2    forum or rules for arbitration. Opp. at 7. This argument is specious. The plain language of the

3    arbitration agreement states that the arbitration will be conducted under JAMS Streamlined

4    Arbitration Rules or, if JAMS is unavailable for any reason, by AAA. Dkt. 11-1 at ¶ 5, Ex. A at §

5    17.1. Thus, the "informed consent" necessary to bind Plaintiffs was established by their

6    agreement to the TOS at the time of signing up for the account. *See In re Holl*, 925 F.3d at 1084.

7    Regardless, there is nothing surprising or unfair about the arbitration agreement's

8    designation of JAMS or AAA as the arbitral forum. Plaintiffs argue the arbitration clause is

9    procedurally unconscionable because the TOS "fail[ ] to attach or provide a link to the

10   designated JAMS rules, forcing the user to seek them out from another source." Opp. at 7. Once

11   again, Plaintiffs' argument is foreclosed by binding authorities. *See Baltazar v. Forever 21, Inc.*,

12   62 Cal. 4th 1237, 1246 (2016) (rejecting argument that there was a "greater degree of procedural

13   unconscionability" in the defendant's arbitration clause because the defendant "did not provide

14   [the plaintiff] with a copy of the AAA's rules for arbitration of employment disputes")[1];

15   *Poublon*, 846 F.3d at 1262 (holding there is no procedural unconscionability in incorporating

16   arbitration rules by reference rather than attaching them to contract); *see also Turng v.*

17   *Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 624-25 (N.D. Cal. 2019) ("[The failure to provide

18   Plaintiff with a copy of the AAA rules does not amount to any procedural unconscionability.").

19   <u>Finally</u>, Plaintiffs argue procedural unconscionability based on certain provisions in the

20   arbitration clause that allegedly conflict with JAMS "minimum standards" for consumer

21   arbitrations. Opp. at 7. But an alleged conflict between Okcoin's terms and JAMS's internal

22   standards does not render Okcoin's TOS procedurally unconscionable. The TOS are clear that

23   Okcoin and its users—many of whom are ***not*** "consumers" under JAMS's definition—agree to

24   arbitrate with JAMS under its Streamlined Rules "as modified by this agreement" (or, if JAMS is

25   unavailable for any reason, with AAA). Plaintiffs fail to explain how any alleged conflict

26

27   ───────────────

28   [1] Where—as here—the "challenge to the enforcement of the agreement has nothing to do with the AAA rules [but] . . . concerns only matters that were clearly delineated in the agreement she signed," the failure to attach the rules to the contract is not unconscionable. *Id*.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

1  between the arbitration clause and JAMS's standards for consumer arbitration agreements

2  present an unfair surprise to users, who are specifically advised as to which rules apply.

3  Regardless, whether JAMS's consumer standards apply to Okcoin's arbitration clause,

4  whether those standards conflict with the arbitration clause, and (if so) how the supposed conflict

5  affects the arbitrability of this dispute, are questions to be answered by the JAMS arbitrator. *See*

6  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In *Brennan*, the Ninth Circuit held

7  that the incorporation of specific arbitration rules into an arbitration agreement "constitutes clear

8  and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Id.* Here, as

9  in *Brennan*, the arbitration rules incorporated into Okcoin's arbitration clause—the JAMS

10 Streamlined Rules—give the arbitrator sole authority to resolve any dispute over the "validity,

11 interpretation or scope of the agreement under which Arbitration is sought," as well as over the

12 "interpretation and applicability of these Rules." *See* https://www.jamsadr.com/rules-

13 streamlined-arbitration/ (Rule 8). Thus, Plaintiffs are required to raise this issue with the

14 arbitrator; it is not properly before the Court and does not provide a basis for the Court to

15 invalidate Okcoin's arbitration clause on unconscionability grounds.

16 Moreover, as Plaintiffs recognize, if JAMS declines to serve as the arbitrator for any

17 reason, the arbitration will proceed with AAA. Opp. at 8-9. There is nothing unconscionable

18 about this procedure. On the contrary, identifying AAA as an alternative forum *reduces* any

19 potential surprise, as it informs users what will occur if JAMS is unavailable. Plaintiffs argue this

20 still constitutes unfair surprise, because "AAA maintains 56 different sets of active rules" leaving

21 users "to guess which rules" apply. Opp. at 9. Once again, Plaintiffs' argument is contrary to

22 Ninth Circuit authority. *See Wisely*, 709 F. App'x at 864. In *Wisely*, the plaintiff argued

23 Amazon's arbitration agreement was procedurally unconscionable because it indicated AAA

24 would be the arbitrator but "it was unclear which [AAA] rules would apply." *Id*. The Ninth

25 Circuit rejected this argument, finding that the plaintiff had a "reasonable opportunity to

26 understand that the Consumer Arbitration Rules would apply in the context of his consumer

27 purchases." *Id*. (internal citation omitted). Here, too, Plaintiffs obviously understand which AAA

28 rules would apply, as they argue that AAA (like JAMS) has specific requirements for consumer

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

1   arbitrations against which Okcoin's arbitration clause would be measured. Opp. at 9.[2]

2          Simply put, Okcoin's arbitration clause clearly states that JAMS Streamlined Arbitration

3   Rules apply, and if JAMS is unavailable for any reason the parties will arbitrate with AAA.

4   Plaintiffs' tortured arguments attempting to cast this straightforward process as somehow

5   confounding or surprising are without merit.

6          **B.      Plaintiffs Fail to Show Substantive Unconscionability**

7          Plaintiffs have shown only that Okcoin's arbitration clause is part of an adhesion

8   contract, which under California law "give[s] rise to a low degree of procedural

9   unconscionability at most." *Poublon*, 846 F.3d. at 1261-62. Thus, Plaintiffs must show

10  significant substantive unfairness to avoid arbitration. *See Ajamian v. CantorCO2e, L.P.*, 203

11  Cal. App. 4th 771, 796 (2012) ("Where . . . the degree of procedural unconscionability is low . . .

12  the agreement will be enforceable unless the degree of substantive unconscionability is high.").

13  Plaintiffs identify nothing in Okcoin's arbitration clause that render it so fundamentally unfair

14  that it would "shock the conscience" to require them to arbitrate their claims.

15         **1.      There is No Material Lack of Mutuality in the Terms of Service**

16         Plaintiffs do not dispute—because they cannot—that the arbitration clause (in both the

17  applicable 2021 TOS, and the inapplicable July 2022 amendment) expressly states that both

18  users and Okcoin are required to arbitrate. Rather, Plaintiffs argue that, despite this language, the

19  TOS effectively require only users to arbitrate, while allowing Okcoin to avoid arbitration. This

20  is an incorrect reading of the contract and is contrary to applicable law.

21         <u>First</u>, Plaintiffs' argument that the carve-out for intellectual property disputes is

22  substantively unconscionable (Opp. at 11) is meritless. As Plaintiffs concede, this carve-out

23   applies to both Okcoin and users, so there is no lack of mutuality. *See Sperring v. LLR, Inc.*,

24  2019 WL 13240893, at *9 (C.D. Cal. July 23, 2019) (rejecting argument that intellectual

25  property carve-out in arbitration agreement was unconscionable for lack of mutuality because

26

27  _____

28  [2] Plaintiffs' argument is sheer hyperbole: unless a user believes that Arabic language rules for International Dispute Resolution, or dozens of other obviously inapplicable rules might apply to a dispute with Okcoin, there are not "56 different sets" of AAA rules that could apply here.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

1   "this carve-out . . . applies to both parties, not just Defendants"). And even if the carve-out were

2   one-sided in Okcoin's favor, the Ninth Circuit has held this type of exemption from arbitration is

3   not substantively unconscionable. *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031 (9th Cir.

4   2016) ("[T]he provision in the Terms of Service in this case excluding intellectual property

5   claims from mandatory arbitration is not unconscionable.") (citing *Sanchez*, 61 Cal.4th at 916).

6   As the Ninth Circuit recognized in *Thompkins*, companies like Okcoin that engage in e-

7   commerce have "valuable intellectual property rights in its website and database, [and are]

8   entitled to an extra 'margin of safety' based on legitimate business needs." 840 F.3d at 1031

9   (quoting *Baltazar*, 62 Cal.4th at 1250). Thus, Okcoin's bilateral carve-out for intellectual

10  property disputes is not unconscionable. *See Han*, 2017 WL 446881, at *11 (Westmore, J.)

11  (holding intellectual property carve-out was not unconscionable under *Thompkins* and *Baltazar*).

12          <u>Second</u>, Plaintiffs suggest the arbitration requirement is effectively unilateral because

13  Okcoin reserves the right to file an action in court to collect "a debit balance or outstanding

14  amount." Opp. at 10. This limited carve-out is not substantively unconscionable. Okcoin is a

15  commission-based business; it receives a commission from the proceeds when users buy and sell

16  digital assets on Okcoin's exchange. Valenzuela Decl. at ¶ 4. It is paid that commission at the

17  time of the transaction, and the transaction will be processed only if the user has a sufficient

18  account balance to pay Okcoin's commission. *Id*. Thus, there are primarily only two situations—

19  both of which are rare and inapplicable here—where an account could accrue a "debit balance"

20  that Okcoin might seek to collect in court. The first arises where Okcoin allows a user to trade

21  digital assets "on margin" (*i.e.* where Okcoin effectively loans funds on a short term basis). *Id*. at

22  ¶ 4(a). Okcoin only allows a limited number of *institutional* investors to trade on margin; it is not

23  an option available to individual users like Plaintiffs. *Id*. The second way a user may have a

24  "debit balance" is through criminal conduct. For example, users could fund their account through

25  fraud—a digital form of "check kiting," in which a user funds an Okcoin account with an ACH

26  transfer from a bank, purchases digital assets with those funds, moves those assets out of the

27  Okcoin account, and then fraudulently induces the originating bank to reverse the initial

28  transaction—leaving Okcoin as the ultimate victim of the fraud. *Id*. at ¶ 4(b). In both situations,

1    time is of the essence, as the user may quickly become judgment-proof due to insolvency or may

2    be in the process of laundering the proceeds of their fraud to avoid recovery. And in both

3    situations, an arbitration award alone is insufficient to collect the debt through actions such as

4    garnishment—Okcoin *must* obtain a court judgment, whether or not it also takes the unnecessary

5    step of arbitrating its indisputable right to recover.

6          For these reasons, courts recognize that "the exemption of debt collection claims from the

7    arbitration provision does not render the provision unenforceable for lack of mutuality, because

8    debt collection is inherently one-sided and it would not make sense to require a financial

9    institution to arbitrate every time it attempted to collect on an unpaid bill." *Ventura v. 1st Fin.*

10   *Bank USA*, 2005 WL 2406029, at *5 n.3 (N.D. Cal. Sept. 29, 2005); *see also, e.g.*, *Cohen v. CBR*

11   *Sys., Inc.*, --- F.Supp.3d ---, 2022 WL 4087507, at *5 (N.D. Cal. Sept. 6, 2022) ("[A]llowing

12   defendants to rely on collection agencies for the limited purpose of collecting past due accounts,"

13   rather that pursuing such claims in arbitration, "is not so one-sided as to shock the conscience.").

14   As these cases make clear, allowing a carve-out exempting limited debt collection actions from

15   arbitration—whether by allowing the company to go to court or to refer the debt to a collection

16   agency—is clearly within the "margin of safety" that companies can work into consumer

17   agreements to support a legitimate commercial need. *See Tompkins*, 840 F.3d at 1030 (citing

18   *Baltazar*, 62 Cal. 4th at 1250).

19         On this issue, the authorities Plaintiffs discuss in their Opposition are either

20   misrepresented or distinguishable. Opp. at 10-11. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th

21   Cir. 2010) did not turn on—or even discuss—the limited carve out for debt collection at issue

22   here; the applicable arbitration provision was expressly one-sided and did not require the

23   company to arbitrate any claims (among many other terms found unconscionable). *Stirlen v.*

24   *Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997) is nearly the same; there were multiple one-sided

25   carve-outs permitting the company to litigate virtually any claim it might have against

26   employees, while employees were required to arbitrate any claims against the company—with a

27   shortened statute of limitations and dramatic restrictions on available remedies. Plaintiffs' reliance

28   on *Cabatit v. Sunnova Energy Corp.*, 60 Cal. App. 5th 317 (2020) fares no better. The underlying

1    arbitration clause in that case was "clearly one-sided" because it required a lessee to arbitrate any

2    and all claims, while permitting the lessor to litigate any claim of breach. 60 Cal. App. 5th at

3    325. None of these authorities discuss a single, limited carve-out like the one at issue here, which

4    is only implicated in rare scenarios involving institutional investors or outright fraud—and

5    *necessarily* involves the recovery of undisputed debts that require a court judgment to collect.

6        Third, Plaintiffs point to various other provisions in the TOS in an attempt to create the

7    illusion that Okcoin has artfully exempted itself from the plain language of the arbitration clause.

8    Opp. at 12-13. None of this language implicates the bilateral requirement that the parties will

9    arbitrate legal claims that may arise. Section 9 of the TOS prohibits users from using Okcoin's

10   platform to engage in illegal activities, and gives Okcoin the right to freeze a user's account and

11   assets or take measures including "prosecution." That is, this clause makes clear that Okcoin is

12   permitted to take measures—short of litigation—to prevent users from using their accounts to

13   engage in illegal conduct. Indeed, it is imperative that Okcoin be able to take immediate action

14   when alerted, by law enforcement or otherwise, that its platform is being used for illegal activity

15   such as money laundering or financing criminal conduct (*e.g.*, terrorism or human trafficking).

16   Valenzuela Decl. at ¶ 5. That Okcoin retains the ability to prevent its users from using their

17   accounts to further illegal conduct does not make the TOS substantively unconscionable.

18        **2.    The "Informal Dispute Resolution" Provision Is Not Unconscionable**

19        Plaintiffs next take aim at an innocuous provision stating that both parties will attempt to

20   informally resolve disputes. Opp. at 13-15. Their argument is wholly without merit.

21        First, Plaintiffs contend that this provision somehow shortens statutes of limitation

22   applicable to users' legal claims. Opp. at 13. That is not what the agreement states. There is

23   nothing in the TOS stating that a user waives his claim against Okcoin, or suffers *any* limitation

24   on his ability to arbitrate, if he does not attempt to informally resolve his dispute—either within

25   30 days or otherwise. By its plain language, the 30-day timeframe is to "notify" the other party

26   of a dispute, after which the parties will "attempt" to resolve it informally.

27        Courts in this district and throughout the Ninth Circuit have repeatedly rejected attempts

28   to contort informal dispute requirements like Okcoin's into unconscionable terms that shorten the

statute of limitations. *See Garcia v. Comcast Cable Communs. Mgmt. LLC*, 2017 WL 1210044, at *2 (N.D. Cal. Mar. 31, 2017) (rejecting argument that arbitration clause was substantively unconscionable "because it imposes 'improper statutes of limitations' in the form of 'a unilateral 30-day time limitation for an employee to act'"); *Abreu v. Slide, Inc.*, 2012 WL 2873772, at *6 (N.D. Cal. July 12, 2012) ("It is not unconscionable to require a thirty day [informal] negotiation period prior to the initiation of arbitration proceedings."); *Denson v. Keplr Vision, LLC,* 2021 WL 3419237, at *3 (S.D. Cal. Aug. 5, 2021) (same); *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1022 (E.D. Cal. 2008) (agreement that encouraged employees to submit claims within 30 days was "only a guideline" and did not impermissibly shorten statute of limitations).

Second, Plaintiffs argue that the informal dispute resolution provision is one-sided and thus impermissibly gives Okcoin a "free peek" at a user's case. Opp. at 14-16. This is, again, an absurd overreading of the language at issue. The arbitration clause clearly states that each party will notify the other of any dispute and will attempt to resolve it informally. Plaintiffs' strained attempt to cast this is a one-sided artifice to give Okcoin an unfair advantage is demonstrably contrary to the language at issue. The cases on which Plaintiffs rely (Opp. at 15-16) are inapposite, as they all involved arbitration agreements that were *expressly* unilateral. *See Pokorny*, 601 F.3d at 999 (arbitration clause unconscionable based in part on "*unilateral* requirement that an [customer] submit . . . to Informal and Formal Conciliation before proceeding to arbitration"); *Dunham v. Env't Chem. Corp.*, 2006 WL 2374703, at *8 (N.D. Cal. Aug. 16, 2006) ("*one-sided* duty to exhaust pre-arbitration remedies […] adds to the contract's substantive unconscionability by permitting [the defendant] to preview [the plaintiff's] claims").

### 3.    The Modification Clause Is Not Unconscionable

Plaintiffs argue that the entire TOS is unconscionable because Okcoin retains the right to modify the TOS at its discretion. Opp. at 19-20. This is contrary to established law, and also irrelevant since Okcoin seeks only to enforce the 2021 TOS that Plaintiffs expressly agreed to.

"California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Poublon*, 846 F.3d at 1269; *see also Tompkins*, 840 F.3d at 1033

1    (same). Thus, "unilateral modification provisions, such as the one in the acknowledgment

2    [plaintiff] signed, are not substantively unconscionable because they are always subject to the

3    limits imposed by the covenant of good faith and fair dealing implied in every contract." *Ashbey*

4    *v. Archstone Prop. Mgmt., Inc*., 612 F. App'x 430, 432 (9th Cir. 2015).

5        Here, Okcoin only seeks to enforce the TOS that were in effect at the time Plaintiffs'

6    signed up for their accounts and when their claims arose. This precludes any finding of

7    substantive unconscionability. *See Sanfilippo v. Match Grp. LLC*, 2021 WL 4440337, at *3 (9th

8    Cir. 2021) (unilateral modification clause was not substantively unconscionable where the

9    defendant "simply seeks to enforce the contract as originally written").

10 **IV.    LIKE THE 2021 TOS, OKCOIN'S 2022 TOS ARE NOT UNCONSCIONABLE**

11        The 2021 TOS is the applicable agreement for the reasons stated above. But given that

12    Plaintiffs dedicate nearly their entire Opposition to the July 2022 TOS, it bares noting that the

13    terms of those amended TOS—for those individuals to whom it applies, none of whom are

14    potential class members in this case—are likewise not unconscionable.

15        In attacking the July 2022 TOS, Plaintiffs focus only on a provision stating that: "Okcoin

16    may, in its sole discretion, seek to consolidate individual claims in a single arbitration proceeding

17    before a single arbitrator pursuant to applicable JAMS rules and procedures (or equivalent rules

18    and procedures of AAA)." Opp. at 16-17. But Plaintiffs fail to articulate what is so

19    fundamentally unfair about consolidating multiple arbitrations before one arbitrator, under JAMS

20    or AAA rules, that it "shocks the conscience." This provision does not prohibit any user from

21    obtaining an individualized ruling from a neutral arbiter on the merits of their individual case. It

22    does not prevent any user from controlling his or her case and pursuing it as they see fit, with the

23    counsel of their choice. The consolidation provision is *entirely procedural* and does not—in any

24    way—affect Plaintiffs' substantive ability to arbitrate against Okcoin. And it does not harm any

25    user in any way. Indeed, as Plaintiffs recognize, both JAMS and AAA have consolidation rules

26    to support such a process while protecting the rights of individual claimants. *See* Opp. at 17.

27        Beyond the fact that the consolidation provision of the July 2022 TOS in no way harms

28    users or restricts their substantive rights, it would also be impractical for such a provision to be

14

1   bilateral. Okcoin is the only party that will have visibility into all the arbitration demands the

2   company faces. Thus, only Okcoin will know if there are a sufficient number of similar demands,

3   with similar procedural postures, for consolidation to be beneficial to the parties. And ultimately,

4   because JAMS Streamlined Rules have a procedure for consolidating claims, an arbitrator will

5   still need to decide whether the arbitration demands at issue are suitable for consolidation.

6          That Okcoin reserves for itself the right to seek consolidation of related arbitration claims

7   does not eliminate the "modicum of bilaterality" necessary to avoid substantive unconscionability

8   under California law. *Armendariz v. Foundation Health Care Psychare Servs., Inc.*, 24 Cal.4th

9   83, 117 (2000). Okcoin has tens of thousands of users, and thus has a legitimate business need to

10  consolidate related arbitration claims to maximize coordination and efficiency. Any minimal

11  "one-sidedness" to this provision does not rise to the level of unconscionability.

12  **IV.    ANY MINIMAL UNCONSCIONABILITY CAN BE CURED BY SEVERANCE**

13         Even if there were one or more unconscionable provisions in the 2021 TOS, the Court

14  can—and should—sever them and compel arbitration. Under California law, a court may "refuse

15  to enforce the entire agreement only when it is 'permeated' by unconscionability." *Poublon*, 846

16  F.3d at 1273. In *Poublon*, the Ninth Circuit reversed the district court's order refusing to enforce

17  an arbitration agreement, and remanded with instructions to sever an unconscionable clause that

18  allowed the employer to litigate certain claims in court but required employees to arbitrate. *Id*.

19  The Ninth Circuit found severance appropriate because the offending clause was "collateral to

20  the main purpose of the contract, which is to require arbitration of disputes." *Id*.

21         Here, Plaintiffs come nowhere close to showing that Okcoin's TOS are so "permeated"

22  by unconscionability that the arbitration clause cannot be enforced. Nor have Plaintiffs shown

23  that the central purpose of the contract—to arbitrate disputes—is "so tainted with illegality that

24  there is no lawful object of the contract to enforce none of the provisions." *Id*. To the extent the

25  Court finds anything in the TOS to be unconscionable, the arbitration clause can be rendered

26  valid and enforceable by severing that clause as required by controlling law.

27  **VII.   CONCLUSION**

28         Accordingly, the motion to compel arbitration and stay this action should be granted.

Dated:  January 13, 2023                         VENABLE LLP

                                                          _/s/ Steven E. Swaney_
                                          By: _____
                                                          STEVEN E. SWANEY
                                                          JEAN-PAUL P. CART

                                                 Attorneys for Defendant OKCOIN USA
                                                 INC.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION