UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NGUYEN, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>OKCOIN USA INC.,<br><br>  Defendant. | Case No. 22-cv-06022-KAW<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br>Re: Dkt. No. 11 |

Plaintiffs Michael Nguyen and Nader George filed the instant putative class action against Defendants OKCoin USA, Inc., alleging that Defendant misrepresented the stability and financial security of a cryptocurrency called TerraUSD ("UST"), resulting in financial loss to the class. (Compl. ¶ 9, Dkt. No. 1-1.) Pending before the Court is Defendant's motion to compel arbitration. (Def.'s Mot. to Compel Arbitration, Dkt. No. 11.)

The Court previously deemed this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). (Dkt. No. 20.) Having considered the parties' filings and the relevant legal authorities, the Court GRANTS Defendant's motion to compel arbitration.

**I.  BACKGROUND**

Defendant is a web-based cryptocurrency exchange, offering retail investors a marketplace to buy and sell cryptocurrencies. (Compl. ¶ 4.) In 2020, Terraform Labs began issuing UST, a cryptocurrency intended to maintain a one-to-one value with the U.S. dollar. (Compl. ¶ 6.) Plaintiffs allege that Defendant promoted UST as "essentially a digital U.S. dollar which eliminated the volatility risk inherent to more speculative cryptocurrencies." (Compl. ¶ 6.) In May 2022, however, UST lost 90% of its value in days, during which Defendant restricted users from trading UST. (Compl. ¶ 8.)

1  Plaintiffs are Defendant's customers, who made purchases of UST on Defendant's platform. (Compl. ¶¶ 71, 74.) Plaintiff Nguyen opened an account with Defendant in November 2021, and was required to agree to Defendant's Terms of Service ("TOS") to open his account. (Nguyen Decl. ¶¶ 2-3, Dkt. No. 15; Chan Decl. ¶ 3, Dkt. No. 11-1.) Likewise, Plaintiff George opened his account in March 2022, and was required to agree to Defendant's TOS to open his account. (George Decl. ¶¶ 2-3, Dkt. No. 16; Chan Decl. ¶ 4.) At the time Plaintiffs opened their accounts, the September 2021 TOS was in effect. (Chan Decl. ¶ 5.) The September 2021 TOS included an arbitration clause, which required that arbitration be conducted by JAMS, and that "[t]he JAMS Streamlined Arbitration Rules & Procedures, as modified by this Agreement, shall apply." (Chan Decl., Exh. A ("Sept. 2021 TOS") ¶ 17.1.) In the event that "arbitration before JAMS is unavailable or impossible for any valid reason, the such [sic] arbitration will be conducted by, and according to the rules and regulations then in effect of, the American Arbitration Association (AAA)." (*Id.*)

On September 9, 2022, Plaintiffs filed the instant case, asserting claims for negligence, negligent misrepresentation, and violations of California's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"). (*See* Compl. at 1.) On November 17, 2022, Defendant filed the instant motion to compel arbitration, seeking to compel an arbitration agreement within Defendant's September 2021 TOS. On December 21, 2022, Plaintiffs filed their opposition. (Pls.' Opp'n, Dkt. No. 13.) On January 13, 2023, Defendant filed its reply. (Def.'s Reply, Dkt. No. 19.)

**II.   LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2. "Once the Court has determined that an arbitration agreement relates to a transaction involving interstate commerce, thereby falling under the FAA, the court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the dispute falls within that agreement." *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 U.S. Dist. LEXIS 43531, at *8 (N.D. Cal. Nov. 2, 2005) (citing 9 U.S.C. § 4; *Chiron Corp.*

2

*v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

## III.   DISCUSSION

### A.   Operative Arbitration Agreement

As an initial matter, the parties dispute whether the September 2021 TOS or July 2022 TOS applies. (Pls.' Opp'n at 3; Def.'s Reply at 2.) The September 2021 TOS provides that Defendant may "change or modify the terms and conditions contained in these Terms . . . at any time and at its sole discretion." (Sept. 2021 TOS at 1.) Further, the September 2021 TOS states: "Your non-termination or continued use of this Site or Service(s) after the effective date of any changes or modifications of these Terms will constitute your acceptance of such changes or modifications." (*Id.*) Defendant subsequently modified the TOS in July 2022, and Plaintiffs state that they used Defendant's website thereafter. (*See* Nguyen Decl. ¶ 7; George Decl. ¶ 7.) Thus, Plaintiffs argue that the July 2022 TOS applies to this case. (Pls.' Opp'n at 3.)

Defendant, however, responds that the September 2021 TOS still applies because Defendant did not notify existing users by e-mail or other means about the July 2022 TOS. (Def.'s Reply at 4; Valenzuela Decl. ¶ 2, Dkt. No. 19-1.) Rather, Defendant simply updated the TOS on its website. (Valenzuela Decl. ¶ 2.)

The Ninth Circuit has found that such unilateral changes without notice are not binding on a website user. In *Stover v. Experian Holdings, Inc.*, the plaintiff assented to a website's terms and conditions in 2014, which likewise "contained a change-of-terms provision stating that 'each time' [the plaintiff] 'accessed the Product Website,' she would be manifesting assent to 'the then current' terms of the agreement." 978 F.3d 1082, 1084 (9th Cir. 2020) (internal modifications omitted). The plaintiff then accessed the website in 2018, by which point the terms and conditions had changed. *Id.* Despite the change-of-terms provision, the Ninth Circuit found that the 2014 terms still applied because the plaintiff had not received notice of the change. *Id.* at 1086. Rather, "in order for changes in terms to be binding pursuant to a change-of-terms provision in the original contract, both parties to the contract—not just the drafting party—must have notice of the changes in contract terms." *Id.* In short, "notice—actual, inquiry, or constructive—is the touchstone for assent to a contract, and the resulting enforceability of changed terms in an

3

1   agreement." *Id.*

2   Such is the case here. There is no evidence in the record that Plaintiffs had notice of the
3   July 2022 TOS. Rather, the only evidence in the record is that Defendant did not notify its
4   existing users of the July 2022 TOS. (Valenzuela Decl. ¶ 2.) Thus, as in *Stover*, the September
5   2021 TOS still applies.

### B.   Unconscionability

There does not appear to be any dispute as to whether the arbitration agreement at issue involves interstate commerce. Indeed, the instant case concerns a putative class of all persons in the United States who used Defendant to purchase UST, a cryptocurrency issued by a South Korean company. (Compl. ¶¶ 6, 81.) Rather, Plaintiff argues that the arbitration clause is unconscionable and therefore unenforceable. (Pls.' Opp'n at 4.)

The Court, however, finds that its review is limited to whether the delegation clause is unconscionable. Generally, in deciding whether a dispute is subject to an arbitration agreement, the Court also determines the gateway issues of "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron*, 207 F.3d at 1130. These gateway issues, however, can be expressly delegated to the arbitrator where "the parties clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

Here, there are effectively two delegation clauses: (1) a delegation clause to JAMS, and (2) a delegation clause to AAA, in the event that arbitration before JAMS is impossible. (Sept. 2021 TOS ¶ 17.1.) The Court addresses each in turn.

#### i.   Delegation to JAMS

The September 2021 TOS requires arbitration to be administered by JAMS, with the JAMS Streamlined Arbitration Rules & Procedures applying. (*Id.*) The JAMS Streamlined Rules provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator." *JAMS Streamlined Arbitration Rules & Procedures*, JAMS, https://www.jamsadr.com/rules-streamlined-arbitration/ (last visited Jan. 26,

4

2023). Courts have found that arbitration clauses incorporating the JAMS streamlined rules demonstrate clear and unmistakable intent to delegate the arbitrability issue to the arbitrator. *See Chaine v. Tesla Energy Operations*, No. CV 20-9082-JFW(GJSx), 2021 U.S. Dist. LEXIS 206285, at *10 (C.D. Cal. Apr. 8, 2021).

The Court, however, finds that the delegation clause to JAMS is unenforceable. As Plaintiffs point out, JAMS follows a "Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness." (Pls.' Opp'n at 8.) Under this policy, "JAMS will administrator arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers **only if** the contract arbitration clause and specified applicable rules comply with the following minimum standards of fairness." *See JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness*, JAMS, https://www.jamsadr.com/consumer-minimum-standards/ (last visited Jan. 26, 2023) (emphasis added). Such minimum standards of fairness include requirements that: (1) a consumer is not required to pay more than the $250 fee, (2) no party is precluded from seeking remedies in small claims court, and (3) the consumer has a right to an in-person hearing in their hometown area. (*See id.* ¶¶ 1(b), 5, 7.) Here, however, the September 2021 TOS makes no allowance for claims to be brought in small claims court, instead requiring that all disputes (except those related to intellectual property and debt collection) be arbitrated. (Sept. 2021 TOS ¶ 17.) The September TOS also requires that the parties split the JAMS arbitrator fees and expenses equally, and indeed warns that "the costs of arbitration could exceed the costs of litigation." (*Id.* ¶ 17.1.) It further requires that the arbitration be conducted in San Francisco, California, absent agreement by Defendant to a different JAMS location. (*Id.* ¶ 17.1.) Thus, the September 2021 TOS does not satisfy JAMS's minimum standards.

Defendant does not dispute that this JAMS policy would apply to any arbitration between Plaintiffs and Defendant. Instead, Defendant argues that users "agree to arbitrate with JAMS under its Streamlined Rules 'as modified by this agreement.'" (Def.'s Reply at 7.) Whether the parties agreed to the modifications is beside the point; per JAMS's explicit policy, it will conduct arbitrations involving consumers "**only if**" the September 2021 TOS meets its minimum standards.

Because the September 2021 TOS does not, arbitration before JAMS is not available, rendering any delegation clause to JAMS effectively void. *See Ins. Co. of N. Am. v. NNR Aircargo Serv. (USA), Inc.*, 201 F.3d 1111, 1114 (9th Cir. 2000) ("A contract condition which is impossible to fulfill is void.").

### ii. Delegation to AAA

While the Court finds that the delegation clause to JAMS is unenforceable, the Court concludes that the delegation clause to AAA is valid. Again, the September 2021 TOS further provides that "[i]f arbitration before JAMS is unavailable or impossible for any valid reason, the such [sic] arbitration will be conducted by, and according to the rules and regulations then in effect of, the American Arbitration Association (AAA)." The AAA's Consumer Rules, in turn, grant the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Consumer Arbitration Rules*, AMERICAN ARBITRATION ASSOCIATION, http://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf (last visited Jan. 26, 2023). Courts have found that arbitration clauses incorporating the AAA rules demonstrate clear and unmistakable intent to delegate arbitrability to the arbitrator. *See Maybaum v. Target Corp.*, No. 2:22-cv-00687-MCS-JEM, 2022 U.S. Dist. LEXIS 80466, at *12 (C.D. Cal. May 3, 2022).

In opposition, Plaintiffs argue that it is unclear which AAA rules apply, as AAA maintains 56 different sets of active rules. (Pls.' Opp'n at 9.) A simple review of the names of these rules makes clear that the vast majority of these rules would never apply; for example, there is no doubt that the AAA Rules on Domain Names, Healthcare Payor Providers, Accounting, Olympic Sports Disputes, and Canadian Dispute Resolution Procedures are obviously inapplicable. *See AAA Active Rules*, AMERICAN ARBITRATION ASSOCIATION, https://www.adr.org/active-rules (last visited Jan. 26, 2023). Rather, a reasonable consumer would understand that the Consumer Arbitration Rules apply. *See Wiseley v. Amazon.com, Inc.*, 709 Fed. Appx. 862, 864 (9th Cir. 2017) ("Nor does the incorporation by reference of the American Arbitration Association's (AAA) rules create procedural unconscionability. Although Wisely argues that it was unclear which rules would apply, he had a 'reasonable opportunity to understand' that the Consumer Arbitration Rules would

6

apply in the context of his consumer purchases[.]").

In the alternative, Plaintiffs argue that like JAMS, the AAA has a Consumer Due Process Protocol that make it "questionable whether AAA would even be available as an arbitral forum." (Pls.' Opp'n at 9.) Unlike with JAMS, the Court cannot conclude that the AAA would refuse to administer the arbitration. Rather, the AAA states that it "will exercise its authority to decline administration of arbitration demands where an arbitration clause contains material violations of the AAA Consumer Due Process Protocol." *Practice Areas -- Consumer*, AMERICAN ARBITRATION ASSOCIATION, https://www.adr.org/consumer (last visited Jan. 26, 2023). It is unclear what would constitute a "material violation." For example, the AAA's Protocol states that "Consumer ADR Agreements should make it clear that all parties retain the right to seek relief in a small claims court for disputes or claims within the scope of its jurisdiction," but does not appear to explicitly require it. *Consumer Arbitrator Rules* Principle 5. Likewise, the AAA's Protocol states that face-to-face proceedings "should be conducted at a location which is reasonably convenient to both parties," but neither requires it nor sets a clear standard for what is reasonably convenient to both parties. *Id.* Principle 7. Finally, unlike JAMS, the AAA does not set limits for fee requirements. *Id.* Principle 6. Thus, arbitration before the AAA does not appear impossible.

Having found that there is a valid delegation clause to the AAA, the Court must determine whether the delegation clause itself is unconscionable. The Court finds that it is not. While the arbitration agreement as a whole -- including the delegation clause -- may be procedurally unconscionable given that it is an adhesion contract, Plaintiffs make no argument that the delegation clause itself is *substantively* unconscionable. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) ("The prevailing view is that procedural and substantive unconscionability must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability."). Accordingly, the Court finds that the case must be compelled to arbitration before the AAA, who will determine whether the arbitration agreement is enforceable. Of course, should the AAA decline administration of the arbitration, the parties would presumably be required to return to the Court to determine whether there is an enforceable arbitration clause.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to compel arbitration, and orders that arbitration be submitted to the AAA. The Court shall stay the proceedings in the instant case pending resolution of the arbitration. 9 U.S.C. § 3. The parties shall provide a status report within 30 days of the completion of the arbitration (or any declination by the AAA to administer the arbitration) or within six months of the date of this order, whichever is sooner.

IT IS SO ORDERED.

Dated: February 17, 2023

KANDIS A. WESTMORE
United States Magistrate Judge